## CONWAY ET AL. v. SMITH MERCANTILE CO. ET AL.

APPEAL AND ERROR — SUFFICIENCY OF EVIDENCE TO SHOW THAT NOTES WERE GIVEN AS ACCOMMODATION PAPER — PAYMENT BY CHECK, WHICH IS CREDITED TO OVERDRAWN ACCOUNT OF THE PAYEE — SALE OF STOCK OF GOODS BY INSOLVENT CORPORATION — PREFERENCE OF CREDITORS BY INSOLVENT CORPORATION.

1.   The trial court having had most of the principal witnesses before it, thereby having the better opportunity to judge of

their character and credibility, the question is, When the findings of fact are assailed on proceedings in error, not whether the appellate court would come to the same conclusions from the written report of the evidence, but whether there is sufficient evidence to support the findings.

2. A stockholder in a corporation which has become insolvent, having, at the organization of the company, executed and delivered to it two notes for $3,000, and $3,800, respectively, and in an action in the nature of a creditor's bill wherein it was attempted to establish the liability of the said stockholder for the unpaid portion of the notes — two other stockholders testified that they were given in payment for stock in the company, and the maker testified that they were given as accommodation notes to be used, if necessary, to raise money to buy goods, or to be pledged as security for goods; and only such stock was in fact delivered to the maker of the notes as equaled at par value the amount paid by him upon the notes in money, and the note unpaid was returned to him by the company; and one note was, in fact, used as security for goods purchased by the company; Held, that there was sufficient evidence to sustain the finding of the trial court in favor of the maker of the notes, that they were given for the accommodation of the company, and that he was not liable for that part of the note surrendered to him which had not been paid.

3. The stockholders in a mercantile corporation formed a partnership, with no paid-up capital, to engage in the banking business, having its place of business in the office room of the mercantile company. Both concerns became insolvent, and the account of the mercantile company with the bank was overdrawn largely in excess of $1,450. One of the stockholders in the company, and partner in the banking firm, being indebted to the company for goods to the amount of $1,450, gave in payment his check for the amount upon the said bank which was paid by the bank by crediting the same to the account of the company. There was no direct evidence that the amount of the check was paid by the drawer to the bank. In an action by creditors to reach said sum of $1,450, as an indebtedness due to the mercantile company and unpaid; Held, that the giving of the check, under the circumstances, its acceptance and credit to the company's overdrawn account at the bank, operated as a payment of the debt of the drawer of the check to the company. That it was immaterial whether the bank was insolvent or not, provided the check was paid.

4. A solvent stockholder in an insolvent mercantile corporation to whom the stock of goods has been sold and ·delivered at a fair valuation in consideration of the assumption of certain debts of the company, including its debt to an insolvent bank formerly conducted by a partnership composed of the stockholders of the corporation, and also the assumption of the obligations of the bank, held not liable to respond to the other creditors of the corporation for the value of the stock of goods sold to and received by him.

5. The sale of the goods to the stockholder as aforesaid is not void because it amounted to a preference of those creditors whose debts were assumed by the purchaser in consideration of the sale.

6. A corporation in failing circumstances may give a preference to one or more creditors.

[Decided December 12, 1896.  Commenced in District Court July 17, 1893.]

ERROR to the District Court for the County of Natrona, HON. J. W. BLAKE, Judge.

George M. Conway and W. H. Nickerbocker, copartners doing business as Conway and Nickerbocker, and several other parties, as creditors of the Smith Mercantile Company, brought this action in the nature of a creditor's bill to reach certain alleged assets of the company consisting mainly of an alleged indebtedness to it from John B. Okie for stock in the company, goods purchased from it, and notes given to it; and the value of the stock· of goods transferred to him by the company when insolvent. John B. Okie, C. H. King & Co., Frederick W. Okie, and several creditors not joining as plaintiffs, were made defendants jointly with the company.

The opinion states the material facts; and the contention of the respective parties concerning them is given somewhat fully in the abstract of the briefs of counsel, which renders a further reference thereto, in this place, unnecessary.

Judgment was rendered against the plaintiffs, and they prosecuted error.

*C. C. Wright* and *Allen G. Fisher*, for plaintiffs in error.

Under the evidence Mr. Okie should have been held to be liable to the creditors of the defunct corporation, and the evidence is so overwhelmingly against Mr. Okie that it will be the duty of this court upon the examination of the evidence to reverse the findings of fact. Mr. Okie is liable to the creditors of the corporation for the unpaid balance on his notes upon either one of four theories. (a) That he is a debtor of the company to the amount unpaid upon his notes, the notes having been given in payment of his stock. (b) If the notes were not given in payment of capital stock, then they would at least amount to a subscription for stock, and he would be liable for any unpaid subscription,—and that whether the notes were given for accommodation or not, he was in fact a subscriber to the stock even though the subscription was oral only. (c) That having given these notes, whether as accommodation or not, and having allowed the company through its officers to purchase goods on the credit of these notes (although the notes were not in fact manually hypothecated), he is now estopped to deny the validity of the notes, or his liability thereunder so far as relates to the creditors who sold goods upon the strength of these notes. (d) Even had the notes been given just as testified to by Mr. Okie, still they are not accommodation notes in any such sense that he was at liberty to withdraw the notes from the company, having been by his own testimony supported by a valuable consideration.

The plaintiffs also contend that the sale of the stock of goods and fixtures was fraudulent as to the creditors of the company on four grounds: (a) Because of actual fraud participated in by Mr. Okie. (b) Because the goods were of a value grossly in excess of the actual consideration, and (c) Because it is constructive fraud on the plaintiffs in error to allow an insolvent corporation to prefer one creditor before another, *especially* when the

preferred creditor stands in the relation to the company in which Mr. Okie did, being in fact under any view of the testimony, the largest stockholder and the actual director and manager of the corporation, and because such preference was not only in the interest of Mr. Okie, but was for the benefit of both Shaffner and Smith, the President and Secretary of the corporation. (d) That the sale of the stock of goods, and the transfer of the accounts of the company in effect amount to a voluntary assignment of all the property of the company, and that the same not having been made in accordance with the provisions of the Wyoming statute, are fraudulent and void; and further, that whether the sale of the goods and the assignment of the accounts were one transaction or not, the assignment of the accounts being made within 30 days after the sale, renders the sale void.

As to what constitutes insolvency, see Con'd T. L. Co. v. K. C. V. Co., 45 Fed., 7; Conover v. Hull, 10 Wash., 673; Pub. Co. v. K. C. W. Co., 32 S. W., 1097; 38 N. E., 1007. An insolvent corporation can not prefer a creditor. (Wood v. Drumoner, 3 Mason; Waite on Insolvent Corp., Secs. 654, 162; 5 Thomp. on Corp., Ch. 146; Hdw. Co. v. Stove Co., 88 Tex., 100, 143; Mfg. Co. v. Hutchinson, 63 Fed., 496; Smith v. Hopkins, 10 Wash., 77; Conover v. Hull, id., 673; Pub. Co. v. Wheel Co., 32 S. W., 1096; Orr & L. S. Co. v. Thompson, 35 S. W., 473; Moore, etc., Carriage Co. v. Imp. Co., id.; 387; Nott, etc., Mfg. Co. v. Story etc. Co., 44 Pac., 157; Noble Merc. Co. v. Fowler, 39 id., 727; Ryan v. Ry. Co., 21 Kan., 398; Adams & W. Co. v. Deyette, 65 N. W., 471 (S. D.); 29 N. W., 214; Ingwersen v. Edgecomb, 42 Neb., 740; 45 Fed., 7; Farmers' L. & T. Co., v. Car Co., 45 Fed., 527; Kerstetter's Appeal, 149 Pa. St., 149; Howard v. Lincoln L. Co., 64 Wis., 639; Thompson v. Huron L. Co., 4 Wash., 600; Rouse v. Bank, 46 O. St., 496; Tillson v. Downing, 45 Neb., 549.)

In the case at bar the preference was made in behalf of

the directors of the company, as they derived a substantial benefit from the transfer to Okie. The rule is that an insolvent corporation can not prefer its directors or managing officers. (Olney v. Land Co., 16 R. I., 597; Hays. v. Bank, 51 Kan., 535; Lippincott v. Shaw, etc., Co., 25 Fed., 575; Gottlieb v. Miller, 154 Ill., 44; O'Bear, etc., Co. v. Foler, 17 So., 525; Montgomery v. Phillips, 31 Atl., 622; Collins v. Brierfield Coal Co., 150 U. S., 371; Richards v. Ins. Co., 43 N. H., 263; 136 U. S., 237; 1 Mc Crary, 90; 23 N. Y. 521; 5 Saw.. 403; 13 Fed.. 802; 26 id., 572.

Under the statute of Wyoming, it is contended that when a corporation transfers all of its property it is not an act of the furtherance of its business, and such an act is beyond the power of the directors. (1 Harr. Ch., 106, 111; Rollins v. Clay, 32 Me., 132; 33 Barb., 578; Morawetz on Corp., Sec. 513.)

*Burke & Fowler*, for defendant in error, John B. Okie.

There is no question but that many of the creditors of the Smith Mercantile Co. have been grossly wronged, but none of them so greatly as Mr. Okie, and to him can not be rightfully attributed any wrongful act or intent as against the other creditors. The condition precedent to the bringing a creditor's bill is that there is no property answerable for the debt excepting such as must be reached by the bill, yet in this case there are accounts amounting to more than $5,000 of the Mercantile Co. in the hands of the attorneys who are pressing this suit.

The notes executed by Okie were accommodation notes. The stock book contradicts the claim that he ever owned more than the thirty-three shares, and Smith and Shaffner in June, 1893, signed and filed with the county clerk a. certificate showing the full payment of the capital stock, and stating that $6,700 had been subscribed by them, and $3,300 by Okie. All the testimony respecting the sale of the stock of goods goes to establish the good faith of Mr. Okie. He paid a full consideration. He paid more than.

he had agreed to — not less than $4,317. The payment of his debt to the company for goods previously purchased, by a check upon the bank, was an honest, straightforward business transaction, which constituted payment as truly as if the money itself had been passed. The company received a proper credit for it at the bank, to which it was indebted upon an overdraft. There was no attempt to show that the money was not standing to Okie's credit when he drew and delivered the check. It was accepted at the bank.

Few if any of the creditors in this action are in a position to sustain a suit of this character. They should be judgment creditors. (Fein v. Fein, 3 Wyo., 164; 5 Thomp. on Corp., Sec. 6560; Beardsley v. Foster, 36 N. Y., 574; Streight v. Junk, 59 Fed., 331; Dawson v. Sims, 13 Pac., 507; 150 U. S., 371; Weber v. Weber, 63 N. W., 757; Kittle v. R. Co., 65 Fed., 859.) Real estate can not be reached upon execution from a justice of the peace. In this case the claims of the plaintiff are founded upon a judgment of a justice of the peace, certified to the district court on the day it was rendered. This was without authority of law. (R. S. Sec. 2724.) Holders of void judgments are not judgment creditors. (Epstein v. Ferst, 17 So., 414.)

An insolvent corporation may prefer its creditors the same as an individual, and no good reason has been given for the contrary theory. (Angell & Ames on Corp., Sec. 191; 1 Beach on Pri. Corp., Sec. 358; Waite on Ins't. Corp., Sec. 654; Morawetz on Corp., Secs. 340, 581, 582; Cook on Stockholders, etc., Sec. 661; Brown v. G. R., etc., Co., 58 Fed., 386; Bank v. Lumber Co., 90 Mich., 345; Klosterman v. Mason, etc., Co., 8 Wash., 281; Rice v. Adler, etc., Co., 71 Fed., 151; Fogg v. Blair, 112 U. S., 534; Sanford F. & T. Co. v. Howe, etc., Co., 15 Sup. Ct. R., 621; Moyer v. Chair Co., 32 S. W., 300; O'Bear Jew'l. Co. v. Volfer, 17 So., 528; Barret v. Pollock Co., 18 So., 619; Worthen v. Griffith, 28 S. W.,

236; Ford v. Hill (Wis.), 66 N. W., 116; White, etc., Co. v. Pettes Imp. Co., 30 Fed., 364; Johnson Co. v. Miller, 34 Atl., 316; Sells v. Rosedale, etc., Co., 17 So., 838; Schufeldt v. Smith, 29 L. R. A., 830; Catlin v. Bank, 6 Conn., 233; Peterson v. Brabrook Co., 150 Ill., 290; Lake Shore B. Co. v. Fuller, 110 Pa. St., 156; Mfg. Co. v. Watch Co., 23 Atl., 1003; Co. Court v. Ry. Co., 35 Fed., 167; Allis v. Jones, 45 Fed., 148; Wearne v. France, 3 Wyo., 273.

Where it clearly appears that the bill of exceptions does not contain all the evidence, although it purports to do so, the court will not examine that which it does contain in order to determine the correctness of the judgment, (Thompson Tr., Sec., 2784; Oberfelder v. Kavanaugh, 45 N. W., 372; 3 Ency. Pl. & Pr., 427; Ry. Co., v. Hays, 15 Neb., 231.)

The company did not intend a general assignment when the sale was made to Mr. Okie. But a sale of its property even for the payment of debts, would not constitute an assignment under the laws of this State. (Brown v. Storrie decided in U. S. Court for Wyo.; 110 Ind., 221; 70 Wis., 185; id., 235; 79 id., 199; 58 N. W., 1009; 43 id., 407; 32 id., 379; 55 Fed., 589; 37 N. E., 242; 47 Fed., 99; 13 Sup. Ct. R., 1012; id., 494; 4 Ency. L., 220; 35 Pac., 607; 17 So., 236.)

A subscription of stock can be revoked at any time before issuance and acceptance thereof. (43 O. St., 547.) An agreement to take shares in a corporation does not make the party liable to creditors. (1 Morawetz Corp., 46–61; 1 Beach Corp., 63; 35 Ill., 342; 72 id., 401; 31 Pac., 330; 80 N. Y., 219; 28 Pac., 553; 31 O. St., 130; 37 id., 339.)

CONAWAY, JUSTICE.

The petition in this case is in the nature of a creditor's bill brought by judgment creditors of the defendant in error, the Smith Mercantile Company, a corporation, to

reach and subject to the payment of their judgment's assets of the company which could not be reached by execution.

The Smith Mercantile Company was incorporated by certificate of incorporation dated and acknowledged on February 17, 1893. The incorporators were L. Smith, E. B. Shaffner, and W. F. Louger, Jr. Article six of this certificate provided that the number of trustees should be three, and that L. B. Smith, E. B. Shaffner, and W. F. Louger should be trustees for the first year. The first meeting of these trustees was held on February 17, 1893. At this meeting L. Smith was elected president, W. F. Louger vice-president, and E. B. Shaffner treasurer and secretary of the corporation. The corporation began business with a stated capital of ten thousand dollars. This capital consisted of a stock of goods valued at three thousand two hundred dollars, contributed by L. Smith and E. B. Shaffner, and two notes, one for three thousand and one for three thousand eight hundred dollars, contributed by John B. Okie. It appears from the evidence that John B. Okie was known as a man of considerable means, and that these notes could be made available as business capital, either by placing them as collateral security for goods, or by selling them to some bank or banks. Shaffner was mail route agent on the railroad, one of his stopping places being Casper, the place of business of the corporation. John B. Okie was a wool grower, and was at Casper occasionally. L. Smith was president of the corporation, and actual manager in charge of the business.

About the time of the incorporation of the Smith Mercantile Company the copartnership of L. Smith & Co., Bankers, was formed. It had a nominal capital of one thousand dollars, none of which was ever paid. Of this capital one hundred and sixty dollars was to be contributed by L. Smith, one hundred and sixty by E. B. Shaffner, and six hundred and eighty by John B. Oxie. L. Smith, president and manager of the Smith Mercantile Company,

was cashier of this bank. The bank used the same office room with the Smith Mercantile Company. It is claimed by plaintiffs in error and interveners that the bank was merely auxiliary to the mercantile company, and was, in effect, part of its business.

In June, 1893, the Smith Mercantile Company was ascertained to be in financial straits. L. Smith & Co., bankers, were insolvent. On June 24th neither institution was open for business. They were both closed by the stockholders of the Smith Mercantile Company and the partners in L. Smith & Co., bankers. These stockholders and partners were L. Smith, E. B. Shaffner, and John B. Okie. The account of the Smith Mercantile Company was largely overdrawn. The bank was liable to depositors in considerable sums, the exact amount of which does not appear, with only about thirty dollars cash on hand. On the dissolution Mr. Okie received the stock of goods, of the Smith Mercantile Company on consideration of his assuming the indebtedness of the company to the bank, of seventeen or eighteen hundred dollars, the liabilities of the bank, a debt to Kellogg & Co. of over $1,600, the payment of which he had already guaranteed, and claims against the Smith Mercantile Company in the hands of Attorney Butler for collection of over $500. These liabilities were then estimated at $3,902.43, but proved to be something more than that amount. He was owing the Smith Mercantile Company about $1,450 for goods, which amount he paid by his check on the bank of L. Smith & Co., bankers. He had previously paid his note of $3,000 to the Smith Mercantile Company, and had paid $300 on the note for $3,800, and had accepted stock in the company to the amount of $3,300 in payment for these sums. The $3,000 note had been surrendered to him on payment, and the $3,800 note was surrendered to him on the dissolution of the firm. This last note had not passed out of the hands of the company at that time. The other note had been placed with D. M. Steele & Co. to secure payment for a bill of goods.

Plaintiffs in error brought this action in the district court for Natrona County. They attack the sale of the stock of goods to John B. Okie as without any consideration, and as a fraud on creditors of the Smith Mercantile Co. They ask that Okie be held to account for the value of the goods, which they allege to be $7,500. John B. Okie mortgaged the goods to C. H. King & Co., and sold them, subject to this mortgage, to his brother, Frederick W. Okie. These transfers are also attacked as fraudulent. Plaintiffs in error also allege that the check of John B. Okie to the company in payment of his account has not been paid, and ask that he be held to account for that amount. They also allege that at the time of the dissolution Okie was the owner of sixty-eight shares of the stock of the Smith Mercantile Co. of the par value of one hundred dollars per share, and that his notes for $6,800 were given to the company in payment for this stock for which he had subscribed at the time of the incorporation of the company. They ask that he be held to account for the unpaid balance of these notes. Plaintiffs in error brought this action for themselves and for "all and any such creditors of said defendant, the Smith Mercantile Company, as may desire to join in this action." Twenty-two intervening petitions and four separate answers of other creditors of the Smith Mercantile Company are filed, setting up claims, judgments, attachment liens, etc. They also reaffirm, in substance, the principal allegations of the petition of plaintiffs in error.

E. B. Shaffner also intervenes, representing that he has interests antagonistic to both plaintiffs and defendants. He alleges that his interest in the stock of goods contributed by himself and L. Smith was $2,200, that L. Smith's interest was $1,000, that he, Shaffner, was a route mail agent on a railway, and stopped at Casper every second night, but that L. Smith had charge of the business, and sold the goods to Okie in fraud of his (Shaffner's) rights. The bill of sale, however, is signed

by himself as secretary and treasurer of the Smith Mercantile Company, as well as by L. Smith, president, and it bears the corporate seal of the company.

The Smith Mercantile Company also answers by E. B. Shaffner, its secretary and treasurer. It admits the principal allegations of the petition of plaintiffs, and of the petition of intervenors, and sets up additional debts of itself which it alleges should be paid. It also alleges that John B. Okie has misappropriated and squandered its assets. It asks that John B. Okie be required to pay into court the proceeds of the stock of goods, the amount of his account with itself for goods, the balance of his notes at one time held by the company, that the creditors of the company shall be paid therefrom, and the remainder distributed among the stockholders.

Here are a large number of parties substantially agreeing as to what should be done. John B. Okie alone dissents. He denies all liability. It is sought to require him to pay into court :

First, the unpaid balance of his notes at one time held by the Smith Mercantile Company, $3,500 with interest.

Second, the amount of his account with the company, $1,400 or $1,450.

Third, the value of the stock of goods.

It is further urged that he should be required to pay the creditors of the company because he authorized certain misleading representations as to the financial condition of the company, which were made by L. Smith, and upon which the credits were obtained.

The findings of fact by the trial court were in favor of John B. Okie. The question is whether there is sufficient evidence to sustain these findings. It is not whether this court, from the written report of the evidence, would so find. The trial court had most of the principal witnesses before it, giving that court the better opportunity to judge of their character and credibility. See Marshall v. Rugg, 44 Pac., 700. (6 Wyo.)

1. L. Smith and E. B. Shaffner testify that in the ne-

gotiations leading up to the incorporation of the Smith Mercantile Company, John B. Okie agreed to take sixty-eight shares of stock at one hundred dollars per share, and that his notes for that amount were given in payment for the stock. John B. Okie testifies that these notes were given as accommodation notes at the time, to be used to raise the money on to buy goods, or pledged as security for goods.

The finding of fact on this point by the trial court was in favor of Okie. And there are circumstances indicating that the understanding of the negotiations by Smith and Shaffner or their recollection is at fault. The witnesses all agree that nothing was given in exchange for the notes at the time of the incorporation of the company. Smith and Shaffner say the reason the certificates of stock were not delivered at that time was that they had not then procured their book of blank certificates of stock. If they are correct in this, there would seem to be no reason apparent why the certificates were not all delivered to Okie at once upon the receipt of the book. But the testimony of Smith and Shaffner shows that this was not done. The notes were used in a manner that indicates they were accommodation notes. The note for three thousand dollars was pledged to D. M. Steele & Co. for goods. It was afterward paid by Okie, and certificates of stock issued to him to that amount. Okie also paid three hundred dollars on the other note, which was for three thousand eight hundred dollars, and received certificates of stock to the amount of three hundred dollars, making three thousand three hundred in all. And the $3,800 note was afterward surrendered to Okie without payment of any portion of the $3,500 remaining unpaid. If Okie had received consideration for this $3,500 — that is, if it were not accommodation paper, this surrender is inexplicable on any business principles. The claim that Okie forced the surrender or could do so is incredible. He was not an officer of the company. He was merely a stockholder, and, no doubt, used his influence as a stockholder, with the officers of the

company.   The testimony does not show duress practiced or attempted.

2.  Just before the dissolution of the Smith Mercantile Co., John B. Okie was indebted to it for goods to the amount of about $1,450.   He gave his check for the amount on the bank of L. Smith & Co., bankers.   This bank at the time was insolvent.   But the account of the Smith Mercantile Co. with the bank was overdrawn to an amount largely in excess of $1,450.   This made the check perfectly good for the discharge of the debt of the Smith Mercantile Co. to the full amount of the check.   It is immaterial whether the bank was solvent or not, provided the check was paid.   The check was just as available as money to discharge a portion of the indebtedness of the Mercantile Company to the bank if the check was accepted by the bank, as it appears it was.   It is claimed in argument that the check was never actually paid by Okie to the bank.   There is no direct evidence upon this point, but the presumptions, under the facts stated, are that it was paid to the Mercantile Co. by a reduction of its indebtedness to the bank.   The effect would have been the same if Okie had paid the Smith Mercantile Co. $1,450 in money, and the company had deposited the money in the bank.   It is argued that the bank was merely an adjunct of the Smith Mercantile Co., and the business of the bank merely a part of the business of the company, and that a payment by the company of a portion of its debt to the bank was, in effect, a payment to itself, and therefore constituted no consideration.   This argument is evidently without merit.   The bank may have been used as an adjunct of the business of the Mercantile Co.   But its proper business was distinct from that of the company.   Its duty to its depositors required it to collect the overdrafts of the Mercantile Co. as well as other debts.   It is an extraordinary proposition indeed that the Smith Mercantile Co. could draw the money of depositors from the bank, and not be required or permitted to repay it.   It is to be remembered that this bank had

no paid-up capital. The money it used was the money of its customers.

3. At the time of the closing out of the Smith Mercantile Co. it made a sale of its stock of goods and fixtures to John B. Okie. The purported consideration was the assumption by Okie of certain debts of the company. The debts which he assumed are not involved in this litigation. The books and accounts of the company were left with the officers of the company, for the purpose, as Okie testifies, of making collections and paying the balance of the company's debts. There is evidence tending to show that they were amply sufficient for the purpose. In a few days, however, they were actually transferred, by informal assignment, to Gustave E. Spargur and R. E. Frazer, as security for a portion of the indebtedness of the company. These parties are now endeavoring to collect the same debts from John B. Okie.

Smith testifies that the sale of the goods to Okie, as well as the surrender of his note, was forced by Okie on the ground that he (Okie) owned a majority of the stock of the company, and, consequently, had a right to control the action of the company. This conflicts with the testimony of Okie that he never had more than thirty-three shares of the stock. Okie's testimony is confirmed by the stubs in the stock book, numbered consecutively from one to nine, showing the issue of thirty-three shares to John B. Okie, and sixty-seven shares to Smith and Shaffner. No transfers are shown. It is sought to discredit this book as evidence. It appears that three stubs have been torn out between numbers seven and eight. There is some conflicting testimony as to how two of these stubs came to be torn out. It is not satisfactory.

The claim that Okie controlled the action of the company as the owner of a majority of the stock leads into difficulties. Admitting for the purpose of this discussion that Okie was the owner of a majority of the stock, this would not give him the right or power to compel the owners of a minority to take part of his stock off his

hands.   Much less would it enable him to direct what disposition should be made of the assets of the corporation after his stock was reduced to a minority, or as part of the same deal by which his stock was so reduced.   It is considered by counsel for plaintiff in error and the intervenors that the sale of the stock of goods to Okie was in payment of indebtedness of the company to him, and constitutes him a preferred creditor.   The only ground that appears in evidence for considering Okie a creditor of the Smith Mercantile Co. is that, prior to the dissolution of the company, he had voluntarily guaranteed the payment of a claim of Kellogg & Co. against the company for over $1,600, and some claims in the hands of Attorney Butler for collection, amounting to over $500.   It appears that these guarantees were given without the knowledge or request of the officers of the company. The contract of a guarantor is that he will pay if the principal debtor does not.   Okie did not become primarily liable for the payment of these claims until he assumed that liability in the arrangements made for the dissolution of the corporation and as part of the agreement for dissolution.   Shaffner testifies that Okie threatened the company with attachment of its property if his demands were not complied with.   Okie was not in a position to attach property at the time of these negotiations.  The company had not requested or approved of his voluntary guarantees.   He had paid nothing for the company; neither had he assumed any liability at its request.   He had very recently been a debtor rather than a creditor of the company.   Much stress is laid upon the proposition that a director of an insolvent corporation can not be a preferred creditor.   If this be good law, it is hardly applicable to Okie, for two reasons: 1.   He was not a director.   2.   He was not a creditor.

The attachment threatened was at the hands of Butler. The alternative seemed to be presented to the company to make such arrangements as it did make for the payment of creditors, or to suffer attachment and forced sale of its

property. The company chose, and probably wisely chose, the former course. The consideration of the sale of the goods to Okie was his assumption of the debt to Kellogg & Co., the claims in the hands of Butler, and the debt of the company to the bank. He also assumed the debts of the bank. The amount of the debts of the bank is not shown in any manner. The probable explanation of this is that the payment of the debts of the Mercantile Company to the bank enabled the bank to pay its debts. The entire amount of the debts assumed by Okie was placed at $3,902.43. It proved to be somewhat in excess of that amount. The value of the goods transferred to him was variously estimated at from $3,500 to $8,500. The latter estimate is by L. Smith, and is largely in excess of any other estimate, and is evidently extravagant. It is certainly doubtful whether as much could have been realized from the goods for the creditors in any other manner as was realized from the sale to Okie. If Smith, the manager, could have made a more advantageous disposition of the goods, he would, no doubt, have done so. It is urged that John B. Okie should be held liable to the creditors of the Smith Mercantile Co., on account of certain misleading representations made by L. Smith for the purpose of obtaining credit. Here again the finding of the trial court that Okie had no knowledge of such representations is sustained by the evidence. In fact, most of Smith's representations were strictly in accordance with the facts. The only evidence tending to connect John B. Okie with any of these representations is to the effect that he was present on one occasion when Smith was preparing a statement for the commercial companies. This statement, when completed, was merely to the effect that the paid-up capital of the company was $10,000, and that $6,800 of this was in notes of stockholders. At the time of the dissolution $3,300 of these notes had been paid in cash, and the company held $3,500 in the notes of stockholders, Smith and Shaffner. It is true the transfer of the goods to Okie, thus providing

for the payment of certain creditors, may be regarded as a preference of those creditors to others. It is urged that the assets of a corporation in failing circumstances constitute a trust fund for the benefit of all creditors alike, and that no arrangement resulting in any preference of a part of the creditors over others will be allowed to stand. Judge Thompson takes this view in his commentaries on the Law of Corporations. The great weight of authority is against him. The question has been discussed until it is threadbare, and another discussion here would be unprofitable.

The kindred proposition is also urged that the sale of the goods to Okie was a transfer of all the assets of the corporation, and should be treated as a general assignment for the benefit of creditors. But it was not a transfer of all the assets. The assignment of the books and accounts was not contemplated at the time of the sale of the goods to Okie. It was actually made several days afterward.

*Judgment Affirmed.*

Groesbeck, C. J., and Scott, Dist. Judge, concur.

(Hon. R. H. Scott, judge of the First District, sat in the place of Mr. Justice Potter, who had been counsel in the trial court.