BROWN v. CITIZENS' NAT. BANK OF CHEYENNE, ET AL.
(No. 1381; July 17, 1928; 269 Pac. 40)

470

*J. P. Rusk* and *W. C. Mentzer,* for appellant.

472

*E. C. Raymond,* for respondent.

RINER, Justice.

This was an action brought in the District Court of Weston County by Mrs. Grace Brown, plaintiff below and respondent here, to quiet title to certain real estate in that county, and to restrain the sale of said property under execution issued on a judgment obtained by defendant and appellant, Citizens National Bank of Cheyenne, Wyoming, against one John Popham.

The case was tried to the court without a jury, and plaintiff obtained a judgment quieting title to the land in her and for $350 damages. The defendant below has brought the case here for review by direct appeal. For convenience the parties will be designated as appellant and respondent, respectively.

The respondent, a daughter of John Popham, claims title to the real estate in question by and through a deed

executed by the latter to her under date of October 11, 1923, and recorded October 22, 1923 in the office of the county clerk and ex-officio recorder of deeds of Weston County, Wyoming.

The record discloses that on May 15, 1923, the appellant, as plaintiff, instituted an action in the District Court of Weston County against the said John Popham, as defendant, wherein it was sought to recover judgment for $1311.77 alleged to be due appellant on a promissory note on account of principal, interest and attorney's fees, together with costs of action. Many months after this action had been started by appellant, and on December 6, 1923, it sued out a writ of attachment and caused the lands in controversy in the present suit to be attached on the date last mentioned as the property of the said John Popham. Subsequently on March 19, 1924, appellant secured the entry of a judgment in its favor in that action as prayed, levied upon the attached property and proceeded to advertise and sell the same on June 13, 1924.

The suit now before us was commenced by respondent in the county last mentioned on the 9th day of June, 1924. Its purpose was to quiet respondent's title to the land attached as heretofore recited, and to restrain the proposed sale. It does not appear that an injunction was obtained, and on June 13, 1924, the advertised date, the lands in question were sold under the judgment secured during the month of March preceding, and appellant became the purchaser thereof at said sale.

In defense of the present suit it was pleaded and is contended by appellant that the conveyance of this real estate in October, 1923, by Popham to respondent during the pendency of the litigation by appellant against Popham, was without consideration and was made on the part of the latter for the purpose of hindering, delaying and defeating his creditors in collecting their claims and obligations against him. Appellant prayed that title to

the land be quieted in it, subject only to Popham's equity of redemption, and that the deed from Popham to respondent be cancelled and annulled. The principal question argued by counsel for the parties is whether the findings and judgment of the trial court are supported by the evidence in the case. This necessitates a brief review of the record made on the trial.

Respondent and her husband, Lawrence O. Brown, were the principal witnesses in her behalf. Summarized from the transcript, their testimony was in effect this: John Popham originally owned the real estate involved in this litigation. In the summer of 1923, he left Wyoming and went to Missouri. During the month of September of that year, respondent had some correspondence with her father relative to purchasing this land, and it was agreed between them that she should pay him $1,000 for it. Three hundred dollars of this amount was to be paid in cash, an indebtedness owed by Popham for several years to respondent and her husband in the sum of $200 was to be released by them, they were to pay $220 of back taxes on the premises and the balance of the purchase price was to be paid from a loan, which was immediately to be asked for on the property by respondent. The $300 in cash was sent to Popham in the form of bills in early October, 1923, by respondent's husband in an envelope, and though not registered, had the latter's return card and post office box number thereon. The deed to the property reciting a consideration of $300 was dated October 11, 1923, which was received by respondent a few days after that date, together with two other deeds of other property belonging to Popham running to respondent's sister, as grantee therein. All these deeds were sent by respondent to the County Clerk's office at Newcastle by registered mail for record, but she did not pay the recording fees for all of them. The deed to the land here involved was recorded on the date heretofore recited.

About the time the deed was recorded, respondent and her husband made application for a federal farm loan for $1,000 or $1200 on the property, stating in a verified application therefor, upon the advice of the Secretary and Treasurer of the Farm Loan Association, that the land was worth $3,200. The loan was ultimately not made because of this pending litigation. These transfers of property by Popham to his daughter left certain property still standing in his name consisting of forty acres of land that had been taken by him on a debt of some $1600, a small house and lot in Upton, Wyoming, and another lot in that town. Respondent and her husband, at the time of the purchase by them of the property in controversy, knew nothing about Popham's indebtedness to appellant and were not aware of any litigation brought by appellant against Popham to recover thereon. They testified that their purchase was made in good faith, and that the land at the time it was bought by them was of the reasonable value of $1,000. Respondent's husband testified further that it was not common knowledge in Upton that Popham was in trouble with the bank on account of his indebtedness to it.

Aside from the County Clerk, who testified to recording the several conveyances mentioned above, and the County Assessor, who identified the assessment schedules of Popham in Weston County for the years 1923 and 1924, appellant introduced but one witness, Frank L. Huff, whose testimony was to the effect that the fact of Popham's indebtedness to the Citizens State Bank of Upton was generally known in Upton and vicinity, and that the value of the land in question was $2560 or $2880.

There are several well settled legal principles, as we view this case, which should control its disposition in this court. These principles have frequently been mentioned in its opinions.

Edwards v. Willson, 30 Wyo. 275, 219 Pac. 233, discusses one of these rules thus:

"The rule followed by this court in actions at law where there is conflicting testimony is well known and it is not necessary to cite the cases. And the same rule has been applied in equity cases. Conway v. Smith Mercantile Co., 6 Wyo. 468; 46 Pac. 1084; Patterson v. Hardware Co., 7 Wyo. 401, 52 Pac. 1085; Columbia Min. Co. v. Duchess Min. Co., 13 Wyo. 244; 79 Pac. 385; Phelan v. Cheyenne Brick Co., 26 Wyo. 495; 188 Pac. 354, 189 Pac. 1103; McFadden v. French, 29 Wyo. 401, 213 Pac. 760. The rule, with its reasons, is stated in Conway v. Smith Merc. Co., supra, as follows:
" 'The question is whether there is sufficient evidence to sustain these findings. It is not whether this court, from the written report of the evidence, would so find. The trial court had most of the principal witnesses before it, giving that court the better opportunity to judge of their character and credibility.' "

Another was applied in First National Bank v. Ford, 30 Wyo. 110, 216 Pac. 691, where, quoting from an earlier opinion, it was said:

"A man who alleges fraud must clearly and distinctly prove the fraud he alleges, and the proof must be clear and sufficient to satisfy the mind and conscience of the existence of fraud."

And in Patterson v. Lee-Clarke-Andreesen, 7 Wyo. 401, 52 Pac. 1085, 1090, this court has said:

"The law does not allow us to impute fraud to any party when the facts and circumstances out of which it is supposed to arise may well consist with honesty and purity of intention."

This language was again quoted with approval in Hanson v. Chicago B. & Q. R. R. Co., 32 Wyo. 337, 232 Pac. 1101.

It is urged on appellant's behalf that Popham, by his several transfers of property to his daughters, rendered himself insolvent and unable to pay the judgment which was ultimately rendered in the action pending at the time the conveyances were made. But the record is barren of proof of this. On the contrary, it appears that after the transfers of the properties were made, Popham still possessed forty acres of real estate and a house with several lots in Upton, Wyoming. What other property he may have owned in other counties of this state does not appear to have been investigated. It is argued that the assessment schedules identified by the Assessor of Weston County, show that the title to the property remaining in Popham's name in that county was of very little value. But such evidence was merely hearsay, and the trial court was quite at liberty to utterly disregard it, which it apparently did. There seems to be no other evidence in the record on the point.

It is suggested that it is improbable that the $300, testified to by respondent and her husband as sent in cash to the grantor by unregistered mail, was ever sent at all. We are not inclined to accept this view of the matter. The testimony of respondent and her husband stands undisputed that it was so sent. The envelope in which it was sent had respondent's husband's return card thereon. Its loss in the United States' mails was, therefore, most unlikely. In view of the financial straits of many banking institutions in this state in the year 1923, and the consequent distrust of them by the people because of their repeated failures, it seems not at all surprising to us to find people remitting even fairly large sums of money in currency without incurring the risk of using a bank draft, or, indeed, using any agency whatever except a plain envelope with a return card sent through ordinary mailing channels.

It is claimed for appellant that respondent and her husband were familiar with her father's indebtedness to the bank and the pending litigation regarding it. But their testimony is that they had no such knowledge prior to or at the time the deed to respondent was made. There is no testimony before us which disputes this. True, appellant's witness Huff stated that Popham's indebtedness to the bank was known generally in Upton and vicinity, but there is testimony in the record to exactly the opposite effect. The trial court found against appellant on this point, and its decision thereon, under the rule governing the consideration of conflicting testimony in this court to which we have referred, should not be disturbed.

It is urged, too, that the record shows that the consideration paid for the land was disproportionate to its value. But on this point, again, the evidence was conflicting, and we cannot, under the rule just mentioned, determine that the trial court was in error in reaching the conclusion it did. While the deed to respondent recited a consideration of only $300, yet it was testified to, without objection or contradiction, that the full and real consideration for the conveyance was the sum of $1,000; that part of that amount was the payment of back taxes, the amount of which respondent immediately borrowed from other parties and attempted to pay; that another payment to make up that amount was to be raised through a loan to be obtained upon the land through the Federal Land Bank, and that such an application had been promptly made by respondent and her husband. It is sugested as impeaching their statements as to the value of the land, that in this application for a loan it was set out that the land was of the value of $3,200. But it appears that this valuation was inserted in the application upon the express advice of the Secretary and Treasurer of the Farm Loan Association, an official who necessarily must have known the requirements of such proceedings and the practice in

connection therewith. The effect to be given such a statement under the circumstances disclosed by the record is doubtful, especially when it is remembered that before any loan is made, the valuation of the property must be investigated and reported upon both by the loan committee of the Farm Loan Association and by the special appraiser of the land bank making the loan. See 12 U. S. C. A., Secs. 751, 753. In this particular connection, the real query pertinent to the issues before the court was, What was the actual value of the land, as compared with the consideration paid? That fact should not have been difficult to ascertain and establish with reasonable accuracy, yet but one witness testified for appellant concerning the matter.

It may be conceded that there are in the record some circumstances and elements which may perhaps be denominated suspicious, as regards the good faith of the conveyance to respondent, and which tend to sustain appellant's theory concerning the case. We are not inclined, however, to substitute our judgment on the facts, as we find them disclosed in the record before us, for that of the trial court. We do not regard suspicion as proof. Upon a careful examination of the record, we cannot say that the proof of fraud in this case is so clear, satisfactory and convincing as to require us to set aside the judgment of the trial court, who saw and heard the witnesses for both parties. This we say in regard to that part of the judgment under review which quiets the title to the premises in controversy in the respondent.

The remaining portion of the judgment awarding damages to respondent should not, we think, be permitted to stand. The record clearly shows that these damages were made up of $250 attorney fees and $100 travelling expenses incurred by respondent in the present suit. The action, as tried, was one simply to quiet title, and the authorities establish that attorney's fees and travelling ex-

penses for the parties litigant, cannot be awarded under our practice as damages in circumstances such as this case presents before us. See Barquin v. Hall Oil Co., 28 Wyo. 164, 201 Pac. 352, 202 Pac. 1107; 17 C. J. 807, Sec. 133 and extended list of cases cited; 32 Cyc. 1380, subdivision 7c and cases cited.

Our conclusion is that the judgment should be modified by striking therefrom the allowance made therein of $350 for damages, and, as so modified, should be affirmed.

BLUME, C. J., concurs.

CROMER, District Judge, concurs in that part of the opinion modifying the judgment, but dissents as to its affirmance as modified.