## NEIL v. UPDIKE

No. 2117; October 31, 1939; 95 Pac. (2d) 81)

For the defendant and appellant, there was a brief and oral argument by *Edward T. Lazear* of Cheyenne.

For the plaintiff and respondent, there was a brief and oral arguments by *E. E. Wakeman* and *Preston T. McAvoy* of Newcastle.

RINER, Chief Justice.

This is a proceeding by direct appeal from a judgment of the district court of Weston County. The action in that court was one by O. C. Neil as plaintiff there and respondent here against Hugh Updike as defendant and the appellant at bar, to recover the amount of $322.20 on each of nine promissory notes and the balance due on a tenth note after certain payments had been made, each and all of these obligations being dated July 15, 1931; and also to foreclose a certain chattel mortgage presently to be mentioned. These notes were each and all made payable to J. E. Mann, W. R. Humphrey, T. C. Garrott, and the plaintiff, "or bearer," as joint payees. Other than the plaintiff the payees at the time the action was instituted had died, and plaintiff claimed, as sole survivor and having possession of the notes, ready to surrender same upon their payment. All the notes were signed by the de-

fendant, Updike, who in his answer admitted their execution and delivery to said payees and then set forth in his pleading four separate defenses and two counterclaims, upon which issue was joined by plaintiff's reply.

The trial was to the court without a jury, culminating in the judgment in favor of Neil for the amount due on the notes and directing a foreclosure of the above mentioned chattel mortgage, hereinafter described. This is the judgment of which complaint is now made in the instant proceeding. The material facts which need to be recited in order to understand the only question involved in this appeal are as follows:

Prior to July, 1931, the above named payees in said notes were the owners of a one-half interest in certain oil and gas leases upon sundry lands situated in Weston County, Wyoming. The appellant, Updike, then owned the other half interest. Included in these leases was one upon an eighty acre tract of land described as the South Half of the Southeast Quarter of Section 15, Township 46 North, Range 64 West of the Sixth Principal Meridian. These parties, said payees on the one hand and appellant on the other, were also equal joint owners of certain personal property consisting of oil well casing, drilling rigs and oil well equipment. During the early part of the year 1931 negotiations were undertaken between all these persons for the purchase by Updike of all the property, thus held by the payees aforesaid. Warren A. Garrott, a son of T. C. Garrott, one of the payees named as above, who himself resided at the time in Weston County, Wyoming, assumed to act as agent for said payees in these negotiations for the sale of their holdings, which were finally closed during the month of July, 1931.

Conveyances dated July 15, 1931, of the entire interests thus held by said payees, were executed by them in the State of Mississippi, where they were all then

residents, and sent to a bank at Newcastle, Wyoming, to be delivered to Updike upon his making payment therefor, as agreed. Accompanying the conveyances were a series of notes, twenty-two in number, for the total sum of $6,000, and a chattel mortgage form, also dated July 15, 1931, upon the personal property, involved in the transaction, and drawn to secure the payment of said notes, notes and mortgage to be signed by Updike. The latter was to pay additionally $1,000 in cash, thus making a total payment in money and notes of $7,000 by him; and, according to the contention of respondent, Neil, he was also to assign to payees all his interest—which was then as indicated above, a half interest—in the eighty acre tract already specifically described. Appellant, however, claims in this litigation that his payment of $7,000, in cash and notes, was all that he was to turn over to said payees for the transfers of the latter's property aforesaid, i. e. that his action in that regard would "wipe the slate clean."

On July 27, 1931, the conveyances aforesaid were delivered to Updike, the cash payment of $1,000 was made by him, the twenty-two notes signed by him were delivered to the bank for transmittal to the payees aforesaid, and the chattel mortgage duly signed was acknowledged by him and delivered to the bank for record on behalf of said payees.

On July 28, 1931, the day following, Updike, for the recited consideration of "the sum of One Dollar and the further consideration that this instrument is received by the assignee named herein as full, complete and final settlement of any and all claims of every kind and nature which said assignee may have against this assignor," assigned to Warren A. Garrott, aforesaid, all of Updike's interest in the eighty acre tract hereinabove described. Subsequently and on or about September 16, 1931, Warren A. Garrott sold this eighty

acre tract to the Federal Oil Company for the sum of $20,000.

It is apparent from the foregoing that the only question to be resolved here is whether the district court's judgment aforesaid, in favor of respondent Neil, is supported by substantial evidence, the underlying problem being, of course, whether the court was authorized to consider, as it did, that the assignment by Updike to Warren A. Garrott was required and given as a part of the consideration for the transfer by the aforesaid payees of the notes above mentioned of all their interests in the property they held to Updike, as claimed by plaintiff and respondent, or whether, as asserted by Updike, all the notes aforesaid were cancelled in consideration of that assignment being made. This problem, it is evident, is simply a question of fact, and there appear in evidence, among other things, as submitted to the trial court for its consideration thereon, the following:

Subsequently and on the 10th day of November, 1933, after payment for one of the twenty-two notes aforesaid had been made by Updike in full, in a written agreement with certain trustees in said instrument named, said agreement being duly signed and acknowledged by Updike, the said trustees in consideration of certain promises made therein by Updike, agreed to pay the remaining twenty-one notes due from him to "J. E. Mann and associates of Greenwood, Mississippi."

Thereafter and prior to the 16th day of November, 1934, J. E. Mann and the plaintiff below, O. C. Neil, brought suit in the district court of Weston County against Warren A. Garrott and the Federal Oil Company to have Garrott declared their agent in the transactions related above, concerning the eighty acre tract, and that they, the plaintiffs in that suit, be declared the owners of said tract, and for other relief. Trial of this suit was had on November 16th and 17th, also

before the district court of Weston County. On November 17th Updike, as a sworn witness in the case, testified, as shown by the following questions and answers:

"Q   Mr. Updike, there is a letter in evidence, dated January 29, 1931, written by Mr. Garrott to Mr. Mann, Plaintiffs' Exhibit No. 10, in which he states as follows: 'Mr. Updike also made a price on everything. Said he would give Seven Thousand Dollars for everything and give a clear title to eighty acres in fifteen for all our holdings.' Had you prior to that time made that offer to Mr. Garrott for the holdings of Mr. Mann and his associates?

"A.   I presume not. That was my final offer.

"Q   That was your final offer?

"A   Which was later accepted, yes.

"Q   Had you made some other offers and had there been some negotiations back and forth between you and Mr. Garrott?

"A   I never had made an offer until this offer was made.

"Q   You did at that time offer the Seven Thousand Dollars and the eighty acres in Section fifteen?

"A   Yes.

"Q   Now, after the time that you made that offer, or at that time, what did the defendant, Mr. Garrott, say about it, or what did he do about it, if you know?

"A   Of course, I don't know what he done, but he told me he would write them and try to get them to take that offer. He rather doubted they would take it, but he would write.

"Q   Did he ever advise you at any later time that they had accepted your offer?

"A   Yes.

"Q   Now, from that time in January in '31, and July, 1931, insofar as the amount of the offer; that is, as to being Seven Thousand Dollars and eighty acres in Section eighteen, did you at any later time make any change in it, or was that your offer over that period of time?

"A   I never made any change at all. That was Section fifteen instead of eighteen, however.

"Q   I meant to say, 'Section fifteen.' And in July,

1931, did you receive the bill of sale that has been testified to, Plaintiffs' Exhibit 8, that is recorded here in Book 2 of Bill of Sale at page 496. Did you receive that bill of sale—the original of it, I mean?

"A    Yes, I did.

"Q    And about the same time, did you receive this deed from Mr. Mann and his associates, Plaintiffs' Exhibit No. 5, recorded in Book 18 of Placer records at page 393, or the original of it, I mean?

"A    I did.

"Q    In consideration of this assignment to you and the bill of sale, what did you agree with Mr. Warren Garrott that you would give Mr. Mann and his associates?

"A    Seven Thousand Dollars and a series of notes and eighty acres—the south half of the southeast quarter of fifteen.

"Q    That is the south half of the southeast of Section fifteen, forty-six, sixty-four?

"A    Yes, sir.

"Q    Did you also agree to release them from any claims that you might have against them?

"A    I did.

"Q    Whatever Mr. Mann and his associates owed you, you agreed to wipe it out?

"A    Yes."

In connection with this testimony reference may be made at this time to appellant's contention advanced by counsel in his brief, that while Updike testified on that occasion that he offered the $7,000 and eighty acres of oil leases in Section 15, "the fact remains definite and unequivocal, that that offer was not accepted." Yet Updike, approximately only two years after the transaction, testified that the offer was accepted by Mann and his associates.

Under date of November 17, 1934, the district court aforesaid, entered a judgment against Warren A. Garrott and the Federal Oil Company, wherein, among other things, it was found that Warren A. Garrott was the agent of the plaintiffs in his transactions rela-

tive to the eighty acre tract aforesaid and that they were the owners thereof.

Before the instant litigation was started, some twelve of the series of twenty-two notes, aforesaid, had been paid in full by Updike himself or by those who acted for him, and certain payments had also been made, as stated above, on one of the ten notes involved here. Nothing had been paid on the remaining notes.

The trial of the cause now on appeal at bar occurred on March 26, 1938, and on that occasion Warren A. Garrott, sworn as a witness for the plaintiff, after stating that he acted as a "go-between" for Mr. Mann and Mr. Updike, in the negotiations for the sale of the payees' interest aforesaid, by Mann and his associates to Updike, also testified:

"Q   Mr. Garrott, state to the Court whether you ever had any conversation with Mr. Updike, or Mr. Updike with you, about releasing to him the twenty-two notes which had been signed in the bank by him, payable to Mr. Mann and his associates, when he executed the assignment on the south half of the southeast quarter of Section fifteen, Township forty-six, North of Range sixty-four?
"A   No, sir.

\* \* \* \* \* \*

"Q   Mr. Garrott, did you agree with Mr. Updike that those notes which he had signed the day before were to be surrendered to him, if he would execute or make an assignment of the leasehold on the south half of the southeast quarter of fifteen, forty-six, sixty-four?
"A   No, sir."

Testimony of the plaintiff, Neil, appears in the record thus:

"Q   I don't think he understands my question. I will try and make it clear for him. Mr. Neil, when this transaction was made by Mr. Mann on your behalf

and the eighty acres of land received, through Warren Garrott, it was received as a part of the consideration for your leases and properties in Osage?

"A   Yes, it was.

"Q   As part of the same transaction?

"A   That is true.

\*   \*   \*   \*   \*   \*

"Q   Did you understand my question, Mr. Neil? My question was this, Mr. Neil: Is it true, as counsel has pleaded in his answer here—as the defendant has pleaded in his answer, that after you had made this deal with Mr. Updike and given him your leases up here at Osage for the $7,000.00 and notes, that then, as a separate transaction, Mr. Updike transferred you this eighty acres through Mr. Garrott as payment of those notes.

"A   As I understand it, that eighty acres of land wasn't in payment of these notes in any sense, but that eighty acres of land came to us through a court action after these notes were made."

To the contrary of the foregoing, the defendant, Updike, submitted to the court his own testimony that the consideration for his transfer of the eighty acre tract to Warren Garrott, as above set forth, was the release of the twenty-two notes aforesaid, only the day before turned over to the bank for forwarding to the payees of those obligations. He did not otherwise undertake to explain his former testimony, but merely stated either that he did not remember what he had testified to in the litigation against Warren A. Garrott, aforesaid, or that he did not say it or that it was inaccurate.

If we consider that Updike's testimony should be regarded in any degree reasonable (See Montgomery Ward & Co. v. Arbogast, 53 Wyo. 275, 295, 81 P. (2d) 885, and cases cited) to say the least the evidence on the question before us for disposition was in conflict. The trial court held for the plaintiff, and we think correctly. In our judgment there was extremely sub-

stantial evidence to support the court in so deciding. Under well known rules of appellate procedure (See Bissinger & Co. v. Weiss, 27 Wyo. 262, 267, 268, 195 P. 527; Brown v. Citizens National Bank, 38 Wyo. 469, 477, 269 P. 40; Perko v. Rock Springs Commercial Co., 37 Wyo. 98, 106, 259 P. 520; Branson v. Roelofsz, 52 Wyo. 101, 113, 70 P. (2d) 589) the judgment of the trial court should not under the circumstances existing here be disturbed, and it is accordingly affirmed.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.