## PHELAN v. CHEYENNE BRICK CO.

(Nos. 927, 928, 929; Decided March 29, 1920; 188 Pac. 354.)
(Rehearing Denied May 28, 1920; 189 Pac. 1103.)

MECHANIC'S LIENS—AGENCY—RATIFICATION OF AGENT'S ACTS—
PLEADING—AMENDMENT TO CONFORM TO FACTS PROVEN—VARIANCE
—JUDGMENT—DEFECT OF PARTIES WAIVED—CONTINUANCE—STIPULA-·
TION AS TO TESTIMONY OF ABSENT WITNESSES—LIEN STATEMENT—
PRESUMPTIONS—EVIDENCE—FINDINGS ON CONFLICTING EVIDENCE—
LIEN FOR MATERIALS FURNISHED AFTER DATE FOR COMPLETION OF
CONTRACT—NEW TRIAL.

1. Where materials furnished and work performed by lien claimants under contracts with a husband were for the benefit of property jointly owned by the husband and wife, a prima facie case was made that the husband was acting as the wife's agent under the express provisions of Comp. Stat. 1910, Sec. 3817.

2. Where a husband and wife decided to build a house, on a lot jointly owned by them, for a home, and the wife selected the plans and specifications, went with the husband to the architect to have the plans drawn, joined in a mortgage to obtain money for construction, and was often

upon the premises as the work progressed, her conduct showed that she either authorized or ratified her husband's act in contracting for the construction of the house.

3. In suits to enforce mechanic's liens, amendments to the petitions to conform to the proof, by alleging that the defendant husband, in contracting with the principal contractors, was acting as agent for his wife as well as for himself, were properly permitted.

4. In suits to enforce mechanic's liens, there was no fatal variance between lien statements filed as though both husband and wife were parties to the contract and the contract proved, which on its face purported to be a contract between the husband and the principal contractors, where the facts showed that the plaintiff was an undisclosed principal.

5. Under Comp. Stat. 1910, 3808-3810, judgments enforcing liens of materialmen and laborers were in proper form, though they contained no personal judgment against the principal contractors, where such contractors were not served within the state and did not appear.

6. In suits to enforce mechanic's liens, if the failure to serve the amended petitions on the principal contractors operated as a discontinuance of the suits against them, and created a defect of parties defendant, the defendant owners waived the defect, and could not avail themselves of it in the Supreme Court, where it was not raised by demurrer or answer in the trial court.

7. In a suit to enforce a mechanic's lien, a stipulation, made to avoid a continuance, that an absent witness, if present, would testify that notice of the claim and of the intention to file a lien was served on defendants, of which notice a copy was attached and marked "B", constituted sufficient evidence of the notice of intention to file the lien, without formally offering the notice in evidence.

8. In a suit to enforce a lien, there was no fatal variance between a petition, alleging that brick were furnished at the agreed price and were of the reasonable value of $154 and a lien statement, alleging that they were of the fair and reasonable value of $154; the evidence showing that they were of that value.

9. A discrepancy in a lien statement as to the date materials were furnished was immaterial, where no one was misled thereby, though the statement would have been filed too late if the date mentioned therein had been the correct date.

10.  That the names of the principal contractors were given in a contract for the construction of a building as D. and C. in the lien statement as Henry D. and J. M. C., and in the petition as Henry S. D. and James M. C., was immaterial, where the owners were not misled, and the contractors were described and identified in each instance as the contractors having such contract.

11.  Where the petition in a suit to enforce a lien alleged the filing of a lien statement, but failed to allege that it was sworn to, an amendment curing the alleged defect was properly allowed.

12.  Where the materials furnished by a lien claimant were used in the construction of a house, the labor performed was on such house, or on materials that went into it during construction, and were accepted and became a part of the house, and the materials were such as were not infrequently used in the construction of houses, and were presumptively such as were contemplated by the plans and specifications, it was immaterial whether the claimant knew of the contract between the owner and the principal contractors.

13.  Where it was not shown that materials and labor furnished by a lien claimant were not such as were contemplated by the plans and specifications for the building, the presumption was that they met the requirements of such plans and specifications, having been ordered by the contractors and used in the building.

14.  Where suits to enforce liens were tried together, and in one of the suits one of the defendants testified to a written agreement between him and the principal contractors for the construction of the building, and identified it as. an exhibit offered and received in one of .the other cases, the failure to reoffer it in such case was immaterial.

15.  Where there was a conflict in the evidence, and there was substantial evidence to support the finding, it will not be disturbed.

16.  Where a contract for the construction of a building was not forfeited for failure to .complete it within the time specified, one furnishing materials to the contractors thereafter, and prior to the contractors' abandonment of the contract, was entitled to a lien.

17.  In a materialman's suit to enforce a lien, evidence of the dealings between plaintiff and the principal contractors was competent to show the arrangement under which the

materials were furnished as against the objection that it was hearsay.

18. The failure to sustain motions to strike out evidence will not be reviewed, where it is not specified as error in the motion for a new trial.

19. A specification of error in a motion for a new trial, relating to the overruling of objections to the introduction of evidence does not cover the failure of the court to sustain motions to strike out evidence, to which no objection had been interposed.

### ON PETITION FOR REHEARING.

20. A district judge called in to hear a case in the Supreme Court under Const. art. 5, sec. 6, and as amended (see Laws 1917, c. 115) is a "justice" of the Supreme Court within the meaning of Const. art. 5, secs. 4, 5, providing that the justices of such court shall be elected, and that a majority shall be necessary to constitute a quorum.

ERROR to the District Court, Laramie County; HON. WILLIAM C. MENTZER, Judge.

Action for the enforcement of a mechanic's lien by the Cheyenne Brick Co. and others, Frank A. Roedel and others, and the Grier Lumber Co. and others, against Walter Q. Phelan and wife. The three cases were consolidated for trial by stipulation of counsel; there were judgments for plaintiffs in each case and defendants bring error.

The material facts are stated in the opinion.

*Ray E. Lee,* for plaintiffs in error.

The cases were consolidated for error proceedings and are discussed in one brief; the amended petition in the Roedel case did not allege the finding of a lien claim and is defective (3803 C. S.; 27 Cyc. 386; Halligan v. Herbert, 2 Daly 253; Jones on Liens, 1588). There is no evidence showing this plaintiff had knowledge of the contract in evidence and this constitutes a failure of proof (Rockel M. L. 24-27; 3799 C. S.; Phillips M. L. 60-62; Foster v. Swayback, 58 Ill. App. 581; Garnett v. Berry, 3 Mo. App. 205; Merritt v. Crane Coal Co., 126 Ill. App. 337). In the Cheyenne Brick Company case there was no proof of notice of intention to file lien as required by statute (3815 C. S.; 27

Cyc. 111, 113) ; the petition alleges a sale of materials at
an agreed price, but the lien statement alleges materials sold
at a reasonable value, which was a variance (Birell v.
Brown, 63 Pac. 167; Wilson v. Hind, 45 Pac. 695) ; there
is a failure of names of principal contractors in the petition
and a lien statement, and a lack of proof as to knowledge of
lien claimant, as to contract between builder and contractor
as required by 3799 C. S. (see cases above on this point).
The contract introduced was not the contract alleged in the
petition, and the court erred in admitting it (Davis v. Co.,
14 Wyo. 517; Wyman v. Quayle, 9 Wyo. 326) ; the lien
statement contradicts the petition (1379 C. S.; Jones on
Liens, 1325). In the Grier Company case, materials fur-
nished after November 12, 1915, were furnished under a
different agreement from materials previously furnished, a
fatal variance (Henry v. Mahone, 23 Mo. App. 83-27, Cyc.
144; O'Driscoll v. Bradford, 58 N. E. 628; Greenway v.
Turner, 4 Md. 296; Sturn v. Ritts, 7 O. 135; Treusch v.
Shryock, 51 Md. 162; Basham v. Teoors, 51 Ark. 309; 11
S. W. 282). The Roedel petition fails to allege a sum un-
paid or promise to pay, which renders it insufficient (Hurly
v. Ryan, 51 Pac. 20; Dodge v. Kimple, 54 Pac. 94; Stanton
v. Keurick, 35 Mo. App. 19; Hudleson v. Bank, 71 N. W.
304) ; the petition fails to allege a contract between claim-
ant and original contractor, or the lien claimant and own-
ers (Baker v. Winter, 15 Md. 1; Reed v. Norton, 26 Pac.
767; Arnold v. Exchange, 123 Ga. 731; Kirn v. Co., 86
Va. 608) ; in neither case is the evidence sufficient to show
contract between defendants and contractors (Brennan v.
Miller, 97 Mich. 182; 56 N. W. 354; Snyder v. Sparks, 103
N. W. 662). The contract received in evidence was not the
contract pleaded and was not admissible (Jennings v. Hug-
gins, 54 S. E. 169; McAdau v. Miltonberger, 75 Mo. App.
346; Cockerell v. Henderson, 50 L. R. A. N. S. 1; Huff-
man v. Ackley, 34 Mo. App. 277). This is true as to all
three cases; petition did not allege that Walter Q. Phelan
was acting as agent for co-defendant (4437 C. S.). Evi-
dence shows wife not to be a party to the contract (Meyer v.

Broadwell, 83 Mo. App. 571; Thompson v. Keheren, 60 Mo. App. 481; Duross v. Broderick, 78 Mo. App. 260). The findings and judgments do not conform to the statutes governing such cases (3808, 3810 C. S.) A personal judgment is necessary to sustain a judgment establishing a lien (Steinkamper v. McManus, 26 Mo. App. 51; Webbing v. Powers, 25 Mo. 599; Jones v. Hall, 35 N. E. 923; Farley Bros. v. Camonn, 43 Mo. App. 168; Hassett v. Rust, 64 Mo. App. 325). Each of the causes should be reversed.

*Thomas Hunter,* for defendant in error, Frank A. Roedel.

*Matson & Kennedy,* for defendant in error, Cheyenne Brick Company.

*William B. Ross,* for defendant in error, Grier Lumber Company.

Pleading over is a waiver of defects in pleading, which may be cured by amendment (37 Cyc. 397); such admissions are proper in lien cases (27 Cyc. 400; Newman v. Jefferson City, 19 Mo. App. 100; Clark v. Huey, 40 N. E. 152 and cases cited), and permissible under our statute (4437-38 C. S.). Cases cited by plaintiffs in error as to variances between the lien statement and the pleading are not in point; the lien statement was shown to have been filed in time in the Cheyenne Brick Company case; there was no variance in names of contractors, as was shown by the evidence (Durham v. Shindler, 20 Pac. 326; Steinman v. Strimple, 29 Mo. App. 478-85. The materials were delivered to employees of the contractors according to the evidence; no provision of the original contract could affect or restrict the rights of sub-contractors (Lumber Co. v. Harris, 107 Mo. App. 148; 3803 C. S.); the lien period ran from the delivery of the last item of material (Bruce v. Berg, 8 Mo. App. 205; Lumber Co. v. Davis, 14 Wyo. 455); the contract introduced in evidence as the identical contract under which the parties operated as shown by the evidence; it was shown by a preponderance of the evidence that the husband was the agent of the wife (Lumber Co. v. Stevens, 84 Mo. App. 558), and the issue was properly submitted

(Farley v. Strock, 68 Mo. App. 89; Barker v. Berry, 40 Mo. App. 58). The former rule of the Missouri courts requires proof of agency to be cogent and strong, where a husband is acting for his wife (Long v. Martin, 71 Mo. App. 573). However, under the Wyoming statute, the building could be removed and sold under execution (3801 C. S.; McDonall v. Nickolsen, 67 Mo. App. 408). Phelan accepted notice of intention to file a lien for himself, and also as agent for his wife (Lumber Co. v. Mahan, 53 Mo. App. 428). The point, with reference to an error in the caption of the judgment, is without merit (Black, Section 116). A personal judgment against contractors is unnecessary (3809 C. S.). Such is in the effect of the Missouri decisions (Steinman v. Strimple, *supra,* Holland v. Cunliff, 96 Mo. App. 67). The form of the judgment is sufficient (Schulenburg v. Werner, 6 Mo. App. 292).

*Ray E. Lee,* for plaintiffs in error, in reply.

On the question of variance in the names of the contractors, the following additional cases are cited (McNally v. Mott, 3 Cal. 235; Fitzgerald v. Solentine, 10 Metc. 436; Thomas v. Desney, 57 Iowa 58; Phillips v. McKaig, 36 Neb. 853; 55 N. W. 259). An extension of time to perform a contract is a new contract, and must be based on consideration (Surety Co. v. Hanson, 184 Fed. 58); and, unless based upon a new consideration, is inadmissible as a defense to a breach of the written agreement (McIntyre v. Co., 60 Pac. 552; Jobst v. Haden Bros., 50 L. R. A. N. S. 501 and notes), the contract terminates with the period fixed by its terms (13 C. J. 599). Time is the essence where a date for completion is fixed (Phillips v. Seymour, 91 U. S. 646; Morrison v. Wells, 29 Pac. 601). One cannot declare on a contract and recover a subsequent parol modification of that contract (13 C. J. 756; modification of a written contract by parol agreement must be proven by clear and convincing evidence (Stickney v. Hughes, 12 Wyo. 397). A petition which does not state a cause of action will not support a judgment (Crewdson v. Nefsy Co., 14 Wyo.

61; Nichols v. Com'rs, 13 Wyo. 1). The point may be raised for the first time on appeal (Irrigation Co. v. Ditch Co., 21 Wyo. 204). Constructive service cannot be had upon a partnership (Smith v. Hoover, 39 O. S. 249). Service upon one partner is not service upon the firm (19 Pl. and Pr. 900). Allegation of an individual contract is not sustained by proof of a partnership contract (Graves v. Co., 2 Cranch 419; McCord v. Seale, 56 Cal. 262); a material man does not come within Section 3808 C. S. (Rittenhouse v. Co., 264 Ill. 619; Kelly v. Johnson, 251 Ill. 135; 36 L. R. A. (N. S.) 573).

BURGESS, DISTRICT JUDGE.

These are three cases brought here by proceedings in error from the District Court in and for Laramie County, Wyoming, by Walter Q. Phelan and Helen C. Phelan, defendants below, to review three judgments fixing and adjudging liens upon certain premises owned by them and providing for the sale thereof for the satisfaction of the liens. By reason of the rise of these cases out of the same general transaction, the identity of some questions and the similarity of others, in all three, they were, by stipulation of counsel, though separate suits, consolidated for trial in the court below. Separate judgments, however, were rendered and separate motions for new trial filed and overruled. Thereupon, one bill of exceptions was prepared, presented and filed, embodying the evidence and preserving the exceptions in all three cases.

This consolidation has been carried into this court, one brief covering all the cases and all the cases being submitted together for consideration and decision.

On August 5, 1915, Walter Q. Phelan and Helen C. Phelan, plaintiffs in error here, defendants below, were husband and wife and were the owners of certain unimproved premises situate in the City of Cheyenne, Laramie County, Wyoming, on which day a contract in writing was entered into between Walter Q. Phelan, as the owner, and Dugan & Cochran, as the contractors, by the terms of which

the latter were to furnish all the materials and labor re-
quired for the construction of a brick and frame residence
on said premises according to the plans, specifications and
drawings made by William Dubois, architect, and to com-
plete the same on or before November 5, 1915. The contract
was not signed by Helen C. Phelan, nor was she in any way
referred to therein.

The contractors proceeded to the construction of the resi-
dence in accordance with the terms of the contract, but failed
to complete it in time, and, in fact, never did complete it,
but finally abandoned it altogether. The Cheyenne Brick
Company, The Grier Lumber Company, and Frank Roedel
were all lien claimants who, by virtue of contracts with
Dugan & Cochran, had furnished building material and per-
formed labor for them in connection with the construction
of said dwelling between August 5, 1915, and the time of
the final abandonment of the contract by Dugan & Cochran.
These lien claimants, not having been paid, served each a
notice in writing upon Walter Q. Phelan and Helen C.
Phelan of intention of filing a lien, and thereafter filed a
claim of lien in the office of the County Clerk of Laramie
County, Wyoming. Actions were then brought by them to
foreclose the liens and judgments were entered adjudging
their claims to constitute liens, concurrent with each other,
upon the property of Walter Q. Phelan and Helen C. Phelan,
and ordering the sale thereof to satisfy said liens.

So many are the points referred to in the brief of counsel
for the plaintiffs in error, of which some are meritorious
and others not, that we desire to call attention to Section
4599 of the Wyoming 1910 Compiled Statutes, providing
that "No exception shall be regarded unless it is material
and prejudicial to the substantial rights of the party ex-
cepting," and to state that if, in the course of this opinion,
we do not refer to all the matters raised in the briefs, it will
be due to the fact that, in our judgment, those omitted come
obviously within the inhibition of the statute, and not to
any failure on our part seriously to consider them.

We shall proceed first to the consideration of the questions common to all the cases, and then take up those peculiar to each of them.

It is insisted by the plaintiffs in error that the interest of Helen C. Phelan in the premises is not subject to the liens sought to be fastened thereon, because she did not sign the contract between her husband and Dugan & Cochran, and was not a party thereto. It is contended by the lien claimants, on the other hand, that her husband in entering into the contract and causing the erection of a dwelling upon the lot owned by them jointly was acting not only for himself but as the agent of his wife, and that her interest was, therefore, as much subject to the liens asserted as his.

Upon this question Section 3817, Wyoming 1910 Compiled Statutes, has a direct bearing. It provides:

"Sec. 3817. 'Owner' and 'proprietor' defined—Infants and married women. Every person for whose immediate use, enjoyment or benefit, any building, erection or improvement shall be made, shall be included by the word 'owner' or 'proprietor' thereof, under this chapter, not excepting such as may be minors over the age of eighteen years, and married women; and in case the husband of any married woman shall enter into any contract for the performance of any work, or the furnishing of any material, for which a lien is provided by this chapter for the benefit of the wife's property, the husband so contracting shall be deemed *prima facie* to be the agent of his wife owning such property."

It appearing that the material furnished and work performed by the three lien claimants were for the benefit of the jont property of the husband and wife, a *prima facie* case was made that Phelan was acting as his wife's agent in entering into the contract in question, and that she was bound thereby. It then became incumbent upon her, by virtue of this statute, to overcome, if she could, by proper and sufficient evidence, this *prima facie* case of agency. This she failed to do, and, we may add, did not even attempt to do. Mrs. Phelan was not a witness in any of the cases and there is no testimony whatever that Phelan was not her

agent in this matter.  Phelan testified, but he never said he was not her agent, or that he had no authority from her in causing the construction of the house.  He went no further than to say that she was not a party to the written contract with Dugan & Cochran, by which he probably meant that she did not sign the contract and was not referred to therein in any way, which was true.  But this is not necessarily inconsistent with the view that he was acting for her as well as himself in making the contract and had authority from her so to do.  Phelan's testimony clearly shows to us, as it must have shown to the trial court, that in the construction of the dwelling he was acting, not only for himself, but for his wife as well, and with her authority.  He testified in substance that he and his wife together decided to build a house upon the lot in question; that the house so built was to be home for them; that she selected the plans and specifications for the construction of the dwelling; went with him to the architect to have the plans drawn; signed with him a mortgage upon the premises for the express purpose of obtaining a part, at least, of the money for the construction of the house; and that she was often upon the premises as the work progressed.  This conduct of the wife is reconcilable only with the fact that she had either authorized or ratified the act of her husband in causing the construction of the house.  It can not, therefore, be maintained that the trial court was not justified in holding that Phelan was his wife's agent, acting with authority from her in making the contract in question, and that her interest in the property was as much subject to the liens asserted as was his.

In this connection complaint is made by counsel for plaintiffs in error about the action of the trial court, at the close of all the evidence, in allowing amendments to the petitions to the effect that Phelan, in making the contract with Dugan & Cochran, was acting not only for himself but as agent for his wife.  These amendments simply conformed to the facts proven, and there was no abuse of discretion on the part of the court in allowing them.

Nor was there any fatal variance, because the contract proven was a contract which on its face purported to be a contract between Dugan & Cochran and Phelan, while the lien statements were filed as though both of the Phelans were parties to the contract, for in legal effect Mrs. Phelan was a party to the contract, her relation being that of an undisclosed principal.

Objection is made to the form and substance of the judgments rendered, in' that there is no finding "that any one is indebted to the respective plaintiffs, or that said plaintiffs should each have and recover a sum certain, and that the findings and judgments entered do not conform to the requirements of Sections 3808, 3809 and 3810 of the Wyoming 1910 Compiled Statutes."

Dugan & Cochran were made parties defendant to the actions in the court below, but no personal service of process within the State of Wyoming was had upon them or either of them; nor did they appear in any of the actions. Service of process was, however, had upon them in the State of Colorado. The District Court, therefore, had no jurisdiction to render a personal judgment against Dugan & Cochran in favor of the lien claimants, nor were the cases proper cases for the rendition of a personal judgment against any one, nor did the court do so. Sections 3808 and 3810 have no application to the situation presented by these cases. Section 3809 provides in substance that where constructive service only is had upon the debtor, the judgment, if for the plaintiff, shall be that he recover the amount of the indebtedness found to be due and the cost of suit, to be levied out of the property charged with the lien therefor. An examination of the judgments convinces us that they conform in substance to the requirements of this section.

Complaint is also made that the plaintiffs continued their suits as to the contractors, Dugan & Cochran, because there was no service upon them of the amended petitions. If the failure to serve the amended petitions upon Dugan & Cochran operated as a discontinuance of the suits against them and created a defect of parties defendant (which we do not

decide) the plaintiffs in error can not avail themselves of it here, because such defect was not raised by demurrer or answer in the court below, and was therefore waived (Becker, et al. v. Hopper, et al., 22 Wyo. 237, 138 Pac. 179, 23 Wyo. 209, 147 Pac. 1085).

### CHEYENNE BRICK COMPANY CASE.

In this case plaintiffs in error contend:

First:   That there was no proof of notice of intention to file a lien required by Section 3815, Wyoming 1910 Compiled Statutes.

It was, however, stipulated in open court at the time of trial, to avoid a continuance, that C. F. Rugg, a witness then absent, would testify, if present, "that on the 30th day of November, 1915, a notice of a claim for material furnished to defendant contractors as set forth in the petition, and that a lien would be filed upon the property described in the petition, was served upon the defendants, Walter Q. Phelan and Helen C. Phelan, of which notice a copy is attached to the petition and marked 'B'."

The point of the contention, as we take it, is that there was no formal offer in evidence of the notice thus referred to.   If the notice had been set out in full in the stipulation, or if the witness had been present and in testifying stated that he had served a notice, a copy of which was as follows, and then had read the notice, would it be said that the notice so set out or so read was not in evidence?   How, then, does this differ in principle from the situation here?   The notice was set forth as an exhibit to the petition, and as such constituted a part of the record.   The stipulation identified it and by specific reference brought it into the case as a part of the evidence.

Second:   That there is a variance between the petition and the lien statement, in that the former alleges an agreed price for which the bricks were sold, while the lien statement merely alleges the reasonable value of the bricks sold.

The amended petition alleges that the plaintiff furnished the brick "at the agreed price and which were of the reason-

able value of $154.00". In the lien statement it is said that the materials furnished were of the fair and reasonable value of $154.00. The evidence was that the brick were of the value of $154.00. We do not conceive this to be a material or fatal variance. (See E. D. Metcalf Co. v. Gilbert, 19 Wyo. 331, 116 Pac. 1017.)

Third: That the lien statement was not filed within time.

In the lien statement filed is an allegation that the brick company furnished the brick between August 19, 1915, and September 11, 1915, but attached to and made a part of the lien statement is an itemized account of the bricks so furnished, from which it appears that the last item of brick delivered was September 13, 1915. If September 13th is taken as the correct date of the last item, then the statement was filed in time; while if September 11th is taken, it was not. The petition alleges and the proof shows that the last brick furnished was on September 13th. The plaintiffs in error do not claim that they were in any way misled by this descrepancy, and the date, September 11th, must be regarded as a mere mistake or inaccuracy. Says Cyc., Vol. 27, p. 201, "A mistake or inaccuracy in the statement as to a date is not necessarily fatal if no one is misled thereby to his prejudice; nor would such mistake preclude the claimant, when necessary to sustain his lien, from showing the true date." (See also Chapter 68, Wyoming 1911 Session Laws.)

Fourth: That in mentioning the names of the contractors they appear in the contract with Phelan as Dugan and Cochran; in the lien statement as Henry Dugan and J. M. Cochran; and in the petition as Henry S. Dugan and James M. Cochran.

In all three instances, however, they are described and identified as the contractors who had the contract for the construction of the Phelan residence, and no question is raised that they are not the same parties; nor do the plaintiffs in error claim that they have been misled in any way by reason of the discrepancies. (See Steinmann v. Strimple, et al., 29 Mo. App. 478.)

Fifth: That the lien statement is insufficient in that it fails to show that the material described therein was furnished to Dugan & Cochran and used on the premises of the defendants Phelan under any contract between Dugan and Cochran and the defendants Phelan.

An examination of the lien statement, however, discloses that this contention cannot be sustained.

ROEDEL CASE.

In this case plaintiffs in error contend:

First: That the amended petition failed to state a cause of action because:

(a)  It failed to allege the filing of a verified statement of lien claim in the office of the County Clerk of Laramie County.

(b)  It failed to allege a promise on the part of the contractor to pay, and non-payment.

(c)  It failed to allege performance of the contract by Roedel with the original contractor.

The amended petition, however, did allege the filing in the proper office of a lien statement and the only defect, if any, relating thereto was the failure to state that it had been sworn to. The court below properly allowed an amendment curing this alleged defect.

As to the grounds (b) and (c), an examination of the amended petition convinces us that they are not tenable.

Second: No cause of action was proved in that:

(a)  There is no evidence that Roedel sold the material to, or furnished the labor for, the firm of Dugan & Cochran.

(b)  The plaintiff failed to show that he had any knowledge of the contract between Phelan and Dugan & Cochran, and failed to show that the labor performed and materials furnished were in substantial compliance with the principal contract.

As to (a), counsel's attention is directed to pages 28 and 29 of the bill of exceptions, and specifically to the cross-examination by Mr. Lee of Mr. Roedel, from which we believe it will be apparent the contention is without merit.

As to (b), we fail to see or appreciate, under the facts in this case, the significance of knowledge or lack of knowledge on the part of Roedel of the contract between Phelan and the contractors. However, it appears that, through information imparted to him by Mr. Cochran, he had knowledge of the existence of such a contract, though he had never seen it. This much was developed on cross-examination by counsel for plaintiffs in error.

The materials furnished by Roedel were used in the construction of the house, the labor performed was upon the house, or upon materials that went into the house during construction. They were accepted and became a part of the house. The materials were such as are, not infrequently, used in the construction of houses. There is no evidence that these materials and labor were not such as were called for or contemplated by the plans and specifications forming a part of the contract between Phelan and the contractors, nor can it be assumed that they were not. The presumption is that they met the requirements of the plans and specifications, for they were ordered by the contractors, used in the building, and the owners have asserted no claim that they were not such as were contemplated by the contract.

Counsel for plaintiffs in error, in their reply brief, urge a point not raised in their original brief, namely: That Roedel failed to introduce in evidence any contract between Dugan & Cochran and Walter Q. Phelan.

Phelan testified in the Roedel case to a written agreement signed by him and Dugan & Cochran for the construction of a dwelling house upon the property owned by him and his wife, and identified it as Exhibit "D", which had already been offered and received in the Cheyenne Brick Company case (P. 30, B. of E.) In view of this testimony, and in view of the recital in the bill of exceptions that "the three cases were consolidated for the purpose of trial and one record was made the record of all three cases", we fail to see wherein the failure to re-offer in this case the written contract would constitute error. See Benington v. State, 2 O. St. 160, where it is said:

"Where an instrument in writing is produced by a party on a trial as evidence, and witnesses examined in relation to it without objection to its admissibility from the other side, it is not error for the court to regard it as in evidence, although not formally offered and read by the party producing it."

GRIER LUMBER COMPANY CASE.

It is contended in this case that the contractors, Dugan & Cochran, abandoned work on the house on November 12, 1915, and that the items furnished thereafter and up to November 19th, inclusive, were improperly included in the lien statement. In answer to this, however, it is sufficient to say that as to just when the work was abandoned by the contractors there is a conflict in the evidence. There is evidence in the record to the effect that from November 12th to November 19th, 1915, inclusive, Dugan & Cochran had an employee or employees upon the job, and that the materials furnished during that time were used in the building. There is substantial evidence, therefore, to support the finding of the lower court sustaining the lien statement, and it should not be disturbed. See 27 Cyc., p. 100, where it is said:

"It is well established as a general rule that the failure of the principal contractor to complete his contract does not, of itself, defeat the right of the subcontractor, workman or material man to a lien."

Nor is there any merit in the contention that, inasmuch as Dugan & Cochran failed to complete the building by November 5, 1915, the date by which, under the contract, it was to be completed, the items furnished thereafter by the lumber company and used in the building were non-lienable items. The undisputed evidence shows a waiver by Phelan of the time for the completion of the contract. Dugan & Cochran continued their work under the contract until at least November 19, 1915, with the knowledge and consent of Phelan. Phelan never declared a forfeiture of their contract on November 5, 1915, or sought in any way to terminate it on that date or any subsequent date prior to

November 19, 1915, because of their failure to complete the work within the time specified. But he permitted them to proceed under it, and they did proceed under it, the same as though no breach had been committed. This is not a case where the principal contract terminated on November 5, 1915, and where all connection with or authority over the work on the part of the contractors ceased at that time, but is a case where the contract was still in force during the time the materials for which a lien is claimed were furnished. See 6 Cyc., p. 65, note 15. Also see Hydraulic Press Brick Co. v. Green, 164 S. W. 250 (Mo.), where it is said:

"A material man who, under contract with the contractor erecting a building under contract with the owner, furnishes materials for use in the building which are so used is entitled to a lien on the premises for the reasonable value of such materials, and to enforce such lien, regardless of the defaults and delinquencies of the contractor in the performance of his contract with the owner."

It is further contended that "The court erred in admitting statements of Mr. Cochran which were made to Mr. Grier, and which were hearsay and incompetent."

The first statement complained of relates to the dealings between the Grier Lumber Company and the contractors, and was certainly competent to show what the arrangement or contract was between the lumber company and the contractors in the furnishing of the materials that went into the house.

As regards the other two statements complained of, we can find nowhere in the motion for new trial where they were specified as error. In this motion there are only two specifications of error relating to the introduction of evidence, one and seven. Specification one certainly does not embrace these statements, nor does specification seven, because the latter relates only to the overruling of objections to the introduction of evidence, while the errors alleged here consist of the failure of the trial court to sustain motions to strike statements to which no objection had been interposed. Furthermore, specification seven is too general

and indefinite.    (See Holdsworth v. Blythe Fargo Co., 23
Wyo., p. 63).    The judgments in all three cases will be
affirmed.                                    *Judgments affirmed.*

Potter, J., concurs.

Beard, C.. J., and Blydenburgh, J., being unable to sit
in said causes, District Judges. James H. Burgess and
Charles E. Winter were called in to sit in their stead.
Judge Winter, having resigned his office prior to the de-
cision, did not participate therein.

### ON PETITION FOR REHEARING.

Beard, Chief Justice.

The opinion in these cases was handed down March 29,
1920, and appears in 188 Pac. 354.    A petition for a rehear-
ing has been filed by counsel for plaintiffs in error.    The
only ground for a rehearing stated in the petition is, "that
said cases have not been heard by this court; that the
opinion filed herein on March 29, 1920, should be disre-
garded and said cases set down for hearing before this
court, for the reason that the number of justices of this
court required to transact the business of the court were
not present and did not take part in the hearing or de-
termination of said cases."    No objection was made, at the
time, to submitting the cases to the court as then constituted.
The facts are, as stated in a note at the end of the opinion,
that "Beard, C. J., and Blydenburgh, J., being unable to sit
in said cases, District Judges James H. Burgess and Charles
E. Winter were called in to sit in their stead.    Judge Win-
ter, having resigned his office prior to the decision, did not
participate therein."

The journal of the court further shows that Justice Potter
and Judge Burgess were both present and sitting as members
of the court at the time the opinion was handed down, it
being written by Judge Burgess and concurred in by Justice
Potter; and that the other Justices of the court were then
present but not participating in the decision. Counsel cites in
his brief in support of his petition for a rehearing, Sec. 4,
Art. V, of the Constitution, "The Supreme Court of the State

shall consist of three justices, who shall be elected by the qualified electors of the state at a general state election at the times and places at which state officers are elected," etc. Also Sec. 5, id.: "A majority of the Justices of the Supreme court shall be necessary to constitute a quorum for the transaction of business." Also Sec. 879, Comp. Stat. 1910: "A majority of the Justices of the Supreme Court shall constitute a quorum for the transaction of business. In the absence of a quorum on the first day of an adjourned or regular term, the court shall stand adjourned from day to day until a quorum shall be present; and the court may, there being a quorum present, adjourn from time to time to any subsequent date." He also quotes from 15 C. J. 964, "in the absence of a quorum or number required by law to hold court, a judgment rendered by the remaining Judges will be regarded as a nullity, as in such a case there is no authority conferred to render a judgment." And cites the text of that work and cases in note 58; and Long v. State, Ann. Cas. 1912, A. 1244 and notes at 1251 *et seq.*

Counsel makes no claim, nor can any valid claim be made, that there was not a constitutional quorum of the court present both at the hearing and decision of the cases, or that the decision was not by the necessary number of judges, if the District Judges called in were members of the court for the purposes of the cases and are to be counted in constituting a quorum of the court. But his contention is, that they were not members of the court, and cannot be so regarded. He seems to have entirely overlooked Sec. 6, Art. V. of the Constitution. As originally adopted, it read, "In case a Judge of the Supreme Court shall be in any way interested in a cause brought before such court, the remaining Judges of said court shall call one of the District Judges to sit with them on the hearing of said cause." Under that provision, Judges of the District Court were frequently called and were always regarded as members of the court for the purpose of the case. That section of the constitution was amended in 1917, and now reads, "In case a Justice

of the Supreme Court shall for any reason be unable to sit in any cause in said court, the presiding Justice of said court shall call one of the District Judges to sit as a member of said court on the hearing of said cause." Thus increasing the causes for which a District Judge should be called, and expressly providing that he should be, when so called, a member of the court. The language of said section of the constitution is too plain to admit of but one construction, which is, that the judge so called is as much a member of the court for all purposes of the cause in which he is so called, as a regularly elected Justice of the Supreme Court. The members of the constitutional convention evidently foresaw that in the absence of such a provision a condition might arise in which the business of the court would be long delayed. Indeed, but for that provision, the condition might be such that a quorum of the court could not be secured for the hearing and decision of a certain case for nearly six years. If a District Judge who is thus called to sit in any cause is not a member of the court for all purposes of the cause, we are unable to explain for what purpose he is so called.

With the exceptions that it requires a quorum of the court to transact business, and that the decision must be by a majority of such quorum, the authorities cited by counsel in his brief do not sustain his contention, but are against it.

For the Territory of Utah the Act of Congress provided: "The Supreme Court consists of a Chief Justice and three Associate Justices, any three of whom shall constitute a quorum; but no Justice shall act as a member of the Supreme Court in any action or proceeding brought to such court by writ of error, bill of exceptions, or appeal from a decision, judgment, or decree rendered by him as a Judge of the District Court." In Nephi Irrigation Co. v. Jenkins, 8 Utah 452, it was held that under that act any three of the Justices constitute a quorum for the transaction of business, and a Justice who tried the case below might sit for the purpose of making a quorum, but could not act or participate in such proceeding. In Pennsylvania, but not under a constitutional

provision like ours, the Supreme Court of that state in Commonwealth v. Mathews, 210 Pa. St. 372, held that where one or more of the Judges of a court decline to sit in a case by reason of personal interest in the result, the powers of the court necessarily devolve on the remaining Judges, even if only a minority of the court. In the present case, a quorum of the court was present at the hearing and decision of the cases and the decision was by a majority of the Judges who: sat and heard the cause, and is valid. A rehearing is denied.

*Rehearing denied.*

POTTER and BLYDENBURGH, JJ., concur.