(No. 4901.   December 21, 1928.)

THE FIRST NATIONAL BANK OF BOSTON, Respondent, v. CRANE CREEK SHEEP COMPANY, a Corporation, Defendant, and PORTLAND CATTLE LOAN COMPANY, INC., a Corporation, Complainant in Intervention and Appellant.

THE FALK MERCANTILE COMPANY, LTD., a Corporation, Respondent, v. CRANE CREEK SHEEP COMPANY, a Corporation, Defendant, and PORTLAND CATTLE LOAN COMPANY, INC., a Corporation, Complainant in Intervention and Appellant.

[273 Pac. 945.]

Paris Martin and Wm. E. Cameron, for Appellant.

Chas. M. Kahn, N. Eugene Brasie and Charles P. McCarthy, for Respondents.

BRINCK, District Judge.—Plaintiffs and respondents, First National Bank of Boston and Falk Mercantile Company, Ltd., suing upon unsecured promissory notes, on or about November 1, 1925, attached approximately 1,200 tons of hay belonging to defendant, Crane Creek Sheep Company,

situated in Gem county. Portland Cattle Loan Company intervened, setting up its ownership of certain recorded and unsatisfied mortgages on the hay in question, declaring the attachment liens to be inferior to those of its mortgages, and praying that the levies be set aside and the sheriff restrained from interfering with the property until the amounts due under the mortgages be paid or tendered intervenor. Plaintiffs, answering as defendants in intervention, plead that prior to the attachment levies the intervenor, as mortgagee, had duly executed and filed for record in Gem county a "certain release of property covered by the three chattel mortgages set out in said complaint in intervention," and "amongst such personal property so released was specifically mentioned 1,700 tons of hay." On these issues, the court found against the intervenor; and from a judgment in plaintiffs' favor, the intervenor has appealed.

Among the many errors assigned, it will be necessary to discuss only the court's refusal to admit certain proffered evidence touching the execution and purport of the recorded release.

The evidence showed that the intervenor held three mortgages executed by the defendant Crane Creek Sheep Company, and recorded prior to the plaintiffs' levies of attachment. One of them described as the property mortgaged certain described sheep owned, leased, or controlled by mortgagor, and located in Gooding, Twin Falls, Owyhee, Washington, Gem, Bannock, Power and Minidoka counties, and further recited: "This mortgage also covers all hay . . . . owned or purchased during the period of this mortgage by the mortgagor in the counties above described." Another one described as the property mortgaged certain sheep located in Canyon, Valley, Washington, Adams, Minidoka, Power, Gem, and Gooding counties, Idaho, and Baker county, Oregon, and also all hay owned or purchased during the period of the mortgage by the mortgagor in the counties in this mortgage described   A third mortgage described as the property mortgaged all crops growing and to

be grown during the year 1925 on certain lands therein described, situated in Washington, Payette, Gem, and Gooding counties. These mortgages were filed for record in Gem county on October 16, 1924, April 24, 1925, and April 27, 1925, respectively. The release relied upon by plaintiffs was recorded in Gem county on October 14, 1925, the body of it being as follows:

### "RELEASE OF CHATTEL MORTGAGE

"KNOW ALL MEN BY THESE PRESENTS: That Portland Cattle Loan Company, Incorporated, a Washington corporation of North Portland, Oregon, does hereby certify and declare that the chattel mortgages listed below, made and executed by Crane Creek Sheep Company, an Idaho corporation, and recorded in the office of the County Recorder of Gem County, Idaho, are released insofar as the following described sheep are concerned:

| | |
|---|---|
| 7462 EWES | 25 HORSES |
| 225 BUCKS | 25 MULES |
| 75 BUCK LAMBS | 6 PACK OUTFITS |
| 1700 tons of HAY | |

"Sheep are branded ⌐─── on the back in black paint.

"This is to be a partial release only, which does not affect the other security described in the mortgage.

"IN WITNESS WHEREOF," etc.

Intervenor introduced in evidence its said mortgages in support of its complaint in intervention; the plaintiffs, defendants in intervention, introduced the release as defeating the lien claimed by intervenor; and intervenor then offered to prove that it was not the intention of the parties to release hay in Gem county, but that the release referred to certain hay in Washington county, which it had consented should be sold to Webb Sheep Company, and that a subsequent mortgagee of the Webb Sheep Company, because of the fact that the sheep would probably be taken into coun-

ties other than Washington, demanded duplicate releases to record in each of the counties where the mortgages had been filed. Upon the rejection of this offer, the whole case turned, it being apparently the theory of the trial court, as it is of plaintiffs here, that the release, without explanation, operated to release hay in Gem county because it was recorded in that county, and that, in the absence of reformation of the release, which the intervenor had not claimed, the intention of the parties could not be shown to vary the terms of the instrument.

Plaintiffs' contention rests entirely upon the assumption that the release is clear, and operates of its own force to release the hay in Gem county. They contend that the release is not ambiguous, and that no parol evidence is admissible to vary its terms, or to explain it, in the absence of any proceeding to reform it. We think this assumption cannot properly be rested upon the release, as it was drawn and recorded. There were three mortgages of record in Gem county. The release purports only to discharge in part "the chattel mortgages listed below," and none are listed. It may have been the intention of the parties to affect by the release any two of the mortgages and not the remaining one. Again, a reference to the mortgages shows that each of them covers hay in more than one county, and the evidence shows they covered more than 1,700 tons; and the mere fact that the release was recorded in Gem county, purporting as it does to be only a partial release, does not warrant the assumption that the hay intended to be released was that located in Gem county. The fact that the release was recorded in Gem county may no doubt be considered as bearing upon the question of what hay was intended, but is only one of the factors to be so taken into consideration. A mortgage of a specified quantity of chattels out of a larger mass, which does not furnish data for the separation of the chattels, is, by the weight of authority, void for uncertainty. (11 C. J., p. 463.) And no reason appears why such description in a partial release should be of greater efficacy than when contained in the mortgage

itself. The release is entirely ambiguous, both as to the mortgages released and as to the hay affected. Being ambiguous, the release is clearly within the rule permitting and requiring evidence of circumstances and facts bearing upon the intention of the parties to it, which will authorize a court to construe it; otherwise, it is meaningless. Any person dealing with the hay assumed the burden of being able to prove that the hay he so dealt with was that intended to be described by the parties to the release. It is possible that the mere fact that the release was recorded in Gem county made a *prima facie* case for plaintiffs, upon whom rested the burden of showing that the hay they had attached was that intended to be released; but the intervenor's evidence, offered to show the intention of the parties to the release, should not have been rejected.

The judgment is reversed, and the cause remanded for a new trial. Costs to appellants.

Wm. E. Lee, C. J., and Givens, J., concur.

Budge and Taylor, JJ., dissent.

(No. 4901.   January 31, 1929.)

ON PETITION FOR REHEARING.

WM. E. LEE, J.—Although no such question was raised when this cause was argued, respondents now contend that the district judge had no power to take part in the decision. The cause was originally argued to a commission of three district judges, but the court was unable to agree on an opinion. It was, therefore, ordered that the cause be argued to the court. Because of the inability of Justice T. Bailey Lee to sit therein by reason of illness, Judge Brinck, a duly elected and acting judge of the district court of the third judicial district, was called "to sit in said court on the hearing of said cause." That portion of art. V, sec. 6,

of the constitution, providing that, "If a justice of the supreme court shall be disqualified from sitting in a cause before said court, or be unable to sit therein, by reason of illness or absence, the said court may call a district judge to sit in said court on the hearing of said cause," has not been repealed. It was in no manner affected by the amendment which increased the number of justices from three to five. If a district judge, who is thus called "to sit in said court" on the hearing of a cause, is not vested with power to write the opinion of the court, or otherwise participate in the decision of the cause, the same as a justice of the supreme court, the provision is absolutely meaningless. (*Phelan et al. v. Cheyenne Brick Co.*, 26 Wyo. 493, 188 Pac. 354, 189 Pac. 1103.) That it has not been considered meaningless is evidenced by the fact that district judges have participated in a great many decisions of this court. We have no hesitation in holding that, under art. V, sec. 6, of the constitution, this court has the power to call a district judge to sit in a cause in place of a justice incapacitated by illness, and, in such a case, the district judge possesses all the power of a justice of the supreme court with respect to the cause.

Rehearing denied.

Budge, C. J., and Givens and Taylor, JJ., concur.

T. Bailey Lee, J., absent on account of illness, did not participate.