## EDWARDS v. WILLSON, ET AL.
### (No. 1089; October 29th, 1923; 219 Pac. 233)

SALES—DELIVERY ON SALE—ACTS SUFFICIENT TO PASS TITLE ON SALE
OF SHEEP—CONFUSION OF GOODS—TENANTS IN COMMON—APPEAL
AND ERROR—FINDING ON CONFLICTING EVIDENCE.

1. No particular act or ceremony is necessary to constitute
   a delivery on a sale of chattels, any act done with intent
   to transfer posssesion being sufficient.
2. Where plaintiff, employed by defendants as a sheepherder,
   purchased 200 sheep from defendants, 100 of which were
   marked with his brand, but the remainder of which were
   branded with defendants' brand, all the sheep and their
   increase being run with defendants' sheep, there was
   sufficient delivery to complete the sale, in view of the
   facts that no separation or separate branding was in-
   tended and that during the years that the agreement con-
   tinued defendants recognized plaintiff as the owner and
   credited him with all the income and increment thereof.
3. Where plaintiff, employed by defendants as a sheepherder,
   purchased 200 sheep from defendants to be run with de-
   fendants' sheep, and during several years there was no
   separation, but the defendants credited plaintiff with all
   the income and increment thereof, the parties were ten-
   ants in common, and plaintiff lost no rights because of
   confusion of goods.
4. Since the adoption of Code 1886, abolishing distinctions be-
   tween actions at law and suits in equity, the rule that a
   finding on conflicting evidence will not be disturbed on
   appeal is applicable to equity cases.
5. In an action for an accounting for sheep purchased by a
   sheepherder from his employers, which were run with em-
   ployers' sheep for several years, evidence *held* to sustain
   a finding for plaintiff and to entitle him to recover on an
   additional claim disallowed by the trial court.

ERROR to District Court, Niobrara County; WILLIAM C.
MENTZER, Judge.

Action by James Edwards against Eugene B. Willson
and another, doing business under the name of Willson
Bros., for an accounting and judgment for division of profits
derived from certain sheep owned and ranged by the par-

ties. There was a judgment for plaintiff, and plaintiff and defendants bring error.

*Ross* and *Lee* and *J. G. Hartwell* for plaintiff in error.

This is an action brought by plaintiff against the defendants for an accounting, growing out of a transaction in which the plaintiff entered the employment of defendants as a sheep herder, at a fixed salary with the privilege of purchasing a certain number of sheep from defendants and ranging them with the flocks of defendants' sheep under an agreement for the deduction of losses each year and certain expenses, the net proceeds of profit from said sheep and the natural increase to be paid to plaintiff. A dispute occurred between the parties resulting in plaintiff's action against defendants for an accounting, which was referred to a referee to take the evidence and return findings thereon; defendants excepted to the findings of the referee, and the cause, was later tried before the court, resulting in a finding in favor of plaintiff in the sum of $2,699.48, being considerable less than the amount found due plaintiff in the findings of the referee; it is the contention of plaintiff in error that the trial court erred in its computation of the amount due plaintiff. The testimony covers facts relating to the operation of the business for several years, and involves computations of increase, wool production, losses and certain items of expense in operation. The testimony of defendant E. B. Willson, who undertook to testify from books kept during the period, is incomplete and unsatisfactory, for the reason that not all of the items affecting the transaction were entered by him in his books; the percentage of actual losses during the years covered by the transaction varies according to the different years and in some instances is based upon estimates arrived at by witnesses called by defendants; the record of the evidence is voluminous, but we have tabulated and set forth in the brief, what appears to be the essential facts established by the entire evidence; from this it will appear we believe, that the trial court erred in its conclusion as to the amount of wool, and

the increase in the number of sheep with which plaintiff should have been credited; defendants' books were admitted over objection, made on the ground that they were unintelligible; even the witness who kept the books was unable to explain them, or to show wherein said books sustained defendants' position. There are two findings before this court, one by the referee and one by the trial court, which present a wide difference in the conclusions reached, and the evidence being so overwhelming against the conclusions of the trial court, we feel that the case is one wherein the Supreme Court should set aside the findings of the trial court and render a decree on the record for the proper amount. Under the general rule an appeal in equity brings up the whole case, and the appellate court passes upon the record as to the facts as well as to the law. 4 C. J. 659; 1192; An appellate court may also on reversal direct the judgment of a referee without granting a new trial. 2 R. C. L. 283. The referee made findings in favor of the plaintiff for $17,734.92; it was shown that he was a capable accountant of a number of years experience, and in every way qualified to pass upon the facts, which involved accounts between the parties, covering a period of years. The circumstance in itself is sufficient to render his findings and decision worthy of full credit and binding upon the parties, unless this court should find convincing evidence that the findings and conclusions of the referee were erroneous.

*W. C. Kinkead* and *H. B. Henderson, Jr.,* for defendants in error.

Plaintiff's action was for an accounting and recovery of the value of 200 ewes including their increase and wool production covering a period between 1909 and 1917. Plaintiff recovered judgment below, and complains that it was inadequate in amount. The record of the evidence is discussed in considerable detail in the briefs with tabulations relating to the account in controversy. Exceptions were taken by each of the parties to the findings of fact and con-

clusions of law rendered by the court below, and both filed motions for a new trial;

There was no completed sale to plaintiff, and even had there been a complete sale, plaintiff permitted the ewes he claimed to have purchased, to be confused with defendants' flocks, and it was incumbent upon him to distinguish his property. The only measure of plaintiff's recovery as to sheep and wool, is the price paid with interest from date of sale, plus his wages, less whatever credits defendants are entitled to. The computation in plaintiff's brief is erroneous; the court found generally for the defendants upon the evidence; the confusion of the sheep might result in a joint adventure as to the whole flock in which plaintiff would have a proportionate interest; Clay Robinson Co., v. Larson (Minn.) 146 N. W. 1095; Ayre v. Hickson, (Ore.) 98 Pac. 515, 133 Am. St. 819; Dale v. Olmstead, 36 Ill. 150; 85 Am. Dec. 397; Lowe v. Martin, 18 Ill. 286. This principle is resorted to, to prevent loss and forfeiture, because of an allowance of confusion of goods, but the rule cannot be applied, unless the property be of the same kind and quality. Manti Sav. Bank v. Peterson, 33 Utah 209; 95 Pac. 566, 126 Am. St. 817-827; Page v. Jane (N. M.) 190 Pac. 541; 10 L. R. A. 761. Such is the difficulty here; the inconvenience of confusion falls on him, who permits it. 12 C. J. 492. This is a rule of evidence; the burden is therefore upon plaintiff to identify his sheep; Davenport v. Schutt, 46 Ia. 510; In re Thompson (Ia.) 145 N. W. 76-79; Morin v. Pilon (Wis.) 149 N. W. 140; Pierce v. McDonald, 153 N. Y. S. 810. Formerly one permitting a confusion of his goods with another suffered their loss, 12 C. J. 492; but here there was no completed sale; Bank v. Jollett, 60 Ind. 268, 46 Am. Rep. 222; New England Co. v. Standard W. Co., 165 Mass. 328, 52 A. S. Rep. 516; Barber v. Andrews, 26 L. R. A. (NS) 15; Plaintiff was familiar with the account entered and kept from year to year, and made no objection; he is not in a position to challenge the correctness of the account now, 30 Cyc. 704, the presumptions are in favor of

the findings of the trial court, being correct, Morin v. Pilon, supra. Defendants lost one band of 2,000 sheep in a winter storm. If plaintiff had specific sheep, were they in that lost band, or were they in one of the other more fortunate bands, this fact renders estimates uncertain; plaintiff relies upon a sale of specific property. It was therefore necessary to identify it. Wetherby v. Meyer (N. Y.) 50 N. E. 58; Cramer v. Grand Rapids Co., 223 N. Y. 63, 119 N. E. 227; Cent. C. & C. Co., v. Hartman, (8 C. C. A.) 111 Fed. 96. The figures presented by plaintiff's counsel are fanciful and not supported by logical facts. Plaintiff's petition was prepared upon a theory that plaintiff was entitled to recover the value of specific sheep and their increase, and production, which he had permitted to be confused with defendants' bands, and as that theory is rejected by law, his case must fail, as the petition is insufficient. If plaintiff's theory is considered by the court, then the argument of his counsel must be rejected, because of the insufficiency of the petition to state a cause of action, and the insufficiency of the evidence to sustain the findings and judgment against the defendants.

BLUME, Justice.

James Edwards, the plaintiff below, commenced to work for Wilson Brothers, a co-partnership, one of the defendants below, in caring for the latter's sheep, in the spring of 1909, at the agreed wages of $45.00 per month, and he continued in such employment until about January 1st, 1917. Said partnership had, in 1909, approximately 9000 sheep, and out of said number plaintiff, during that year, bought 200 ewes, 100 thereof in the spring and 100 in the fall of 1909, which ewes were to be run by plaintiff in connection with the bands of sheep of said partnership. Plaintiff's ewes remained with said bands of sheep until the sale by said partnership of all of the sheep, including those of plaintiff, in July, 1917, at $12.00 per head. In the meantime losses were sustained, gains accrued by the addition of lambs, sheep pelts and wool were sold and all of the re-

ceipts went into the hands of said partnership, by which
the books were kept. Plaintiff brought this action against
said partnership and its individual members for an account-
ing. The case was referred to a referee, who reported. His
report was set aside and the case tried anew to the court,
without the intervention of a jury, the court made findings
of facts, and judgment was entered for plaintiff for
$2045.08 as a balance due him, plus $654.40 interest, a total
of $2699.48. Motions for a new trial were filed by both the
plaintiff and the defendants, which were overruled, and the
parties on both sides have brought proceedings in error here
from the judgment entered.

1. Defendants contend that the amount awarded to
plaintiff is excessive and that in addition to the wages
earned, plaintiff, after deduction of amounts paid to or for
him, should have been allowed recovery only for the amount
originally paid by him for the sheep bought by him, plus
lawful interest from date of purchase, for the reason
(1) that no delivery was ever made at least of the second
100 sheep purchased and no sale thereof was ever complet-
ed, and (2) because plaintiff's sheep were confused with
those of defendants. The first 100 sheep bought by plain-
tiff were in the beginning marked and branded separately,
but this method was soon abandoned and thereafter all of
plaintiff's sheep bore the brand of defendants and were not
distinguishable from the sheep of the latter. This was to
be so either pursuant to express agreement or common con-
sent, carried out for a number of years. The second 100
ewes bought by plaintiff were never separated at all. But
they were never intended to be separated or marked sep-
arately. No particular act or ceremony is necessary to
make a delivery. Any act done with intent to transfer pos-
session is sufficient. What constitutes delivery must to a
large extent depend on the nature of the property or inter-
est sold, the particular business to which the transaction
is incident, and the circumstances attending the transac-
tion. 35 Cyc. 187, 188. Had the intention been that the

sheep bought by plaintiff should, in order to complete the sale, be separated from the sheep of defendants, and identified, the question of delivery as to the second 100 sheep would be important herein. But that was not the intention, at least as to the last mentioned sheep. The whole transaction, in fact, was substantially one by which an undivided portion of the whole was transferred to plaintiff who had direct charge thereof, who paid the purchase price thereof and whose title was evidenced in writing upon the books of the defendants. We think that, under the facts, there was a sufficient delivery and that the sale made must be considered as a completed sale. In any event defendants recognized the title of plaintiff for a number of years, credited him upon their books with all the income and increment derived from plaintiff's property, year after year, and they are clearly now too late to claim that the sale to plaintiff was never completed. Nor can defendants' claim as to the confusion of property be sustained. In the case of Ayre v. Hixon, 53 Or. 19, 98 Pac. 515, 133 Am. St. Rep. 819, Ann. Cas. 1913-E 659 the rule was stated as follows:

"It is a question of confusion of goods. The remedies of the parties owning portions of the property so commingled depend upon the circumstances of commingling; namely, whether by consent of the owner, by mistake or accident, or whether it was the result of willful, careless or fraudulent conduct. In the first two cases, as between the owners, neither of them will lose his property, but each will be treated as a tenant in common in proportion to his interest, but where willful or wrongful, the commingler or wrongdoer forfeits his interest unless he can identify his goods."

And in 12 C. J. 494, the rule is stated that where a confusion takes place by the consent of the owners, they become tenants in common in the mixture. The confusion in the case at bar took place pursuant to agreement or consent, the total number of sheep and the number of sheep of plaintiff is known, and a reasonable method exists whereby

the interests of the respective parties may be determined. In truth, by the fact that defendants did, from time to time, determine, and enter on their books, the respective interests of the parties, is a complete refutation of the contention that no method existed by which the rights of the parties could be determined. We think that the parties must be treated; as tenants in common and that plaintiff lost no rights by reason of the confusion of goods herein.

2. We shall now proceed to consider the appeal of the plaintiff. His counsel claim that the evidence shows that the lamb crop from 1910 to 1916 inclusive was 70%, 69%, 73%, 48%, 71%, 67% and 65% respectively, that the losses during the winters from the fall of 1909 to the spring of 1917 were 25%, 5%, 50%, 10%, 10%, 10%, 10%, 10% respectively, and upon this basis, and figuring that plaintiff's sheep should all be at all times considered as ewes, they compute that plaintiff had, in July, 1917, a total of 701 head of sheep instead of 135 as found by the court. Under this method of computation, too, the wool money, each year, should, after 1910, have been much larger than that allowed by the trial court, and in short it is claimed that there is due $15,299.57 instead of the amount allowed. Counsel for plaintiff argues that this is an equity case and that this court should try the case *de novo* upon the record before us. But that has never been done in this state since the adoption of the Code of 1886 abolishing distinctions between actions at law and suits in equity. The rule followed by this court in actions at law where there is conflicting testimony is well known and it is not necessary to cite the cases. And the same rule has been applied in equity cases. Conway v. Smith Mercantile Co., 6 Wyo. 468; 46 Pac. 1084; Patterson v. Hardware Co., 7 Wyo. 401; 52 Pac. 1085; Columbia Min. Co. v. Duchess Min. Co., 13 Wyo. 244; 79 Pac. 385; Phelan v. Cheyenne Brick Co., 26 Wyo. 495; 188 Pac. 354; 189 Pac. 1103; McFadden v. French, (Wyo.) 213 Pac. 760. The rule, with its reasons, is stated in Conway v. Smith Merc. Co., supra, as follows:

"The question is whether there is sufficient evidence to sustain these findings. It is not whether this court, from the written report of the evidence, would so find. The trial court had most of the principal witnesses before it, giving that court the better opportunity to judge of their character and credibility."

The rule was also applied, and the same reason given, in Lellman v. Mills, 15 Wyo. 152, 180; 87 Pac. 985, an equity case involving the dissolution of a partnership.

The inquiry to which we accordingly must direct our attention is whether there is substantial and sufficient evidence to sustain the findings of the trial court. Plaintiff himself gave the main testimony in his own behalf. He had no books or memoranda, relied upon the books of defendants, and testified that he had the utmost confidence, up to at least 1915, in E. B. Willson, with whom he was generally dealing. The latter was the main witness for the defendants. He produced the books of said partnership showing the transactions with the plaintiff. He testified to the correctness of the entries and that they were made at or about the time of the several transactions; that plaintiff and defendants had a settlement each year; that at such times they went over the accounts of plaintiff, item by item, and estimated the losses as well as the increase in plaintiff's sheep. In addition to the ordinary items of debit and credit, the correctness of many of which plaintiff admitted, the books show the amount of plaintiff's wool, together with the price received, and generally also the average number of pounds of wool from each sheep sold each year. By reason of this and other testimony, the number of sheep which plaintiff had on hand each year could be easily computed. In addition, the books show directly the number of plaintiff's sheep in 1910, in 1912, in 1914, on October 1, 1915 and on February 1, 1917. No good purpose could be subserved, however, by going into greater details in regard to the testimony. The books appear fair upon their face. They indi-

cate no tampering, the court evidently believed the testimony of the witness E. B. Willson as to the correctness thereof and as to the annual settlements made, and while there are several matters on which we should have liked to have had more light, we think that there was substantial and sufficient evidence in the record to support the findings of the trial court, except only as hereinafter mentioned. We might add here that the contention is made that the court's computation as to the number of plaintiff's sheep each year is based on the court's finding that plaintiff received all of his wool money each year. We do not, however, think that the finding as a whole can be construed as meaning that plaintiff received *all* of the wool money; nor, we think, can it be said to be plain, in view of the fact that the evidence as to the receipt of the wool money by plaintiff rested largely on the testimony as to settlements made and the correctness of the books, that the court did not, in arriving at its conclusion, consider all of the evidence deemed credible on the point.

It seems to have been the custom among sheepmen to ship to market each year the old ewes and wethers, and the testimony indicates that the price of wethers was considerably higher than that of old ewes. Shipments of that class of sheep were made from time to time by said defendants, but until the fall of 1914 or the year 1915, no credit from any such shipments was given to plaintiff. A credit, however, of $171.00 was given plaintiff, as appears on page 69 of Exhibit 7, the ledger of defendants, for 76 head of old ewes shipped, at $2.25 per head. The entry appears under the year 1915, but there is no definite indication just when the shipment was made. Under ordinary circumstances, a portion at least of the plaintiff's sheep so shipped should have been treated as wethers, which would have brought, as shown by the testimony, over $5.00 per head. But this was not done, and was explained by the witness E. B. Willson by stating that it was understood between the parties that instead of crediting plaintiff with the extra amount, if

part of the shipment had been treated as wethers, the remaining sheep of plaintiff from that time on should be considered as ewes, so that the increase of plaintiff in the number of lambs might be larger. The following colloquy between the court and said witness explains the matter:

"The court: . What do you mean, called the sheep ewes?

The witness: Well, he had raised the increase; there had been some wethers among them, they run about half and half, about half ewes and half wethers during the years, and of course there would be the original flock of ewes, and the increase, and that would be part wethers and part ewes, the increase, and we proposed to cull out the old ewes and call his wethers at that time ewes."

But, though there appears to be a consideration for the change in the agreement of the parties, we fail to find where this agreement, so testified to by said witness Willson, was ever carried out by defendants, or where the court gave this testimony any consideration. The contrary appears affirmatively. We have searched the record and the briefs of counsel for an explanation but have searched in vain, and a modification in the judgment, which takes said testimony into consideration, must necessarily be made herein. As we stated, the record does not indicate definitely as to when the shipment above mentioned, and, hence, the agreement, was made, but from the number of sheep credited to plaintiff after October 1st, 1915, and in 1916, it is clear that it was not made after October 1st, 1915. The court found that plaintiff's sheep at shearing time in 1914 numbered 176 head. This finding seems to be supported by the entry as to the amount of wool credited to plaintiff for that year. Page 69 of Exhibit 7 has an entry that plaintiff's sheep "after dipping and shearing time, 1914" numbered 96 head, which would indicate that the shipment above mentioned was made between shearing time in 1914 and the time indicated by the above entry, although this is not clear, and at the time of the trial all parties apparently assumed that it was

made sometime in 1915. The 96 head were, according to the testimony, to be treated as ewes. The number 96 was, however, evidently incorrect, and was in fact 108, with which number plaintiff is credited on page 97 of Exhibit 7 as of date October 1, 1915, in addition to 28 lambs born in the spring of 1915. We shall not disturb the finding of the court as to the increase of 1915, because it does not clearly appear that the shipment above mentioned was made in time so as to have treated wethers as ewes during lambing time in that year. But the finding as to the increase in 1916, at least, cannot stand without modification. It is based on the entry appearing on page 109 of Exhibit 7 that plaintiff had only 69 ewes, whereas under the testimony above mentioned the 39 wethers with which plaintiff is also there credited should be treated as producing ewes—outside of the 28 lambs—after, however, deducting the loss during the winter of 1915-1916. The loss is stated on page 109 of said Exhibit to have been 7%, leaving in the spring of 1916, a total of 127 head, the same number as found by the court, consisting of 26 lambs and older sheep.

The older sheep, however, instead of being 69 producing ewes and 39 wethers, less a loss of 7%, as stated on said page 109 of Exhibit 7 and evidently accepted as correct by the court, should be taken, since wethers were to be considered as ewes, as 101 producing ewes, upon which number the increase in 1916 should be based. The increase in that year is stated in an entry on the ledger of defendants of date February 14, 1917, as 46%. On pages 123 and 126 of Exhibit 4, the journal, showing daily transactions, under date April 12, 1916 and June 11, 1916 respectively, are entries which indicate that the number of ewes bred in that year was 2608 and the number of lambs 1207, or 46.4% lambs from the number of ewes bred, and it is apparent that the foregoing statement in the ledger is substantially based on these statements contained in the journal. The lower court evidently accepted these figures and we cannot say that this should not have been done. Plaintiff should,

accordingly, be credited in 1916 with 47 lambs, which, added to 101 and 26 makes a total of 174. Accepting the court's evident finding, based as it is upon substantial testimony, that the loss in the winter of 1916-17 was 15%, left plaintiff at the time of the sale in July, 1917, 148 head, or 13 more than the number found by the court. These were sold by defendants at $12.00 per head, and the judgment should accordingly be increased by the sum of $156.00, with interest at the legal rate from July 15, 1917 to July 15, 1921, amounting to $49.92, or a total of $205.92.

The case is accordingly remanded to the District Court with direction that the judgment rendered against the defendants be increased as of the date thereof by the amount hereinabove mentioned, to-wit: $205.92, and as so modified the same should be and is affirmed.

*Modified and Affirmed.*

POTTER, Ch. J., and KIMBALL, J., concur.

NOTE—Headnotes (1) and (2), see Sales, 35 Cyc. pp. 187, 308; (3) and (5), see Confusion of goods 12 C. J. Secs. 8, and 16, (1925 Anno.); (4), see Appeal and Error, 4 C. J. Sec. 2870.