WOOLSULATE, INC.,

*Plaintiff and Respondent,*

vs.

FREMONT LUMBER COMPANY, a Corporation,
*Defendant and Appellant.*

(No. 2728; May 23rd, 1956; 297 Pac (2d) 818)

For the defendant and appellant, the cause was submitted upon the brief and also oral argument of W. Randall Boyer and L. A. Crofts, both of Lander, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief and also oral argument of W. M. Haight of Riverton, Wyoming.

494

## OPINION

PARKER, Justice.

Woolsulate, Inc., brought an action against Fremont Lumber Company for $3,105.75 allegedly due for 3,-030 forty-pound bags (four loads) of rock wool, insulating material at the price of $1.02½ per bag. Defendant defaulted, and a judgment was entered for the amount claimed plus interest; but, thereafter, on defendant's motion, the court held that the default

judgment should be vacated and defendant was permitted to respond to plaintiff's petition.

Defendant in its answer set up five defenses: (1) denying the petition generally; (2) setting out a counterclaim by alleging that plaintiff through its duly authorized agent, Insulations, Inc., purchased goods, wares, merchandise, and services from defendant at the market value thereof, on which there remained due the amount of $3,865.78, and praying judgment therefor; (3) alleging that plaintiff, a foreign corporation not domesticated in Wyoming, was unauthorized to do business here; (4) alleging that the price of rock wool was unreasonably high; and (5) admitting defendant's receipt of the rock wool but stating that the same was received from Insulations, Inc.—*not* from *plaintiff*.

The case came on regularly for trial before the court, and there was a finding and judgment for plaintiff in the amount of $3,105.75 plus interest. Defendant has appealed, filing some nine specifications of error which may be summarized as (1) charging that the judgment is unsupported by the evidence and contrary to law and (2) complaining because of the refusal of the court to admit certain evidence relating to the alleged purchase of goods, wares, merchandise, and services by plaintiff from defendant through plaintiff's purported agents, Insulations, Inc.

The gist of the defense is that "plaintiff by * * * its duly authorized agent * * * Insulations, Incorporated, purchased from the defendant goods * * * between the dates of March 28, 1949, and February 19, 1951, for the agreed, reasonable and market value thereof on which account there remains due and owning from plaintiff to defendant a balance * * * of * * * $3,-865.78," and that this sum is in effect an offset to the

bill which plaintiff claims. Defendant insists that it purchased the insulating material for which suit has been brought solely in an effort to recover payment of the amount previously owed by plaintiff as herein mentioned. The situation is somewhat confused by the fact that both the plaintiff, Woolsulate, Inc., and Insulations, Inc., are Utah companies with offices at the same place, 1349 South Main Street, Salt Lake City, Utah, and that C. H. Carlquist is manager of Woolsulate, Inc., and president of Insulations, Inc.

The salient evidence may be summarized as follows: Defendant's president, Beckwith, says that on June 27, 1950, he went to the Salt Lake City joint offices of Insulations, Inc., and Woolsulate, Inc., "purposely to try and make some arrangement whereby we could credit the account," and that he did not then know Carlquist was president of Insulations, Inc. Beckwith further testified that after he returned to Lander he called Carlquist by telephone several times, arranging that the material would be available when the truck arrived; that there were certain letters between Carlquist and defendant; that thereafter defendant's truck was sent to Utah for the four truck loads of insulating material on approximately the dates stated in plaintiff's petition; and that defendant credited the amounts received to the account of Insulations, Inc.

At the point of delivery, a bill was made up for each of the four loads; and the four bills were signed by Bob Moore, an employee of defendant. The first bill contained the notation in red pencil, "picked up by our truck," the second in pencil, "picked up at plant," while the other two contained no notation as to the place of delivery. Defendant in its brief says that "the truck driver was sent to a plant or warehouse to pick up the wool"; and the general discussion at the time of the argument indicates that the insulating material

was actually picked up at plaintiff's plant at Midvale, Utah. Beckwith testified: "We sent Bob Moore with our truck to this address at Salt Lake City.* * * Where he picked it up I wouldn't know and I don't know as he ever said where he got it. We supposed it came from Insulations, Incorporated."

Plaintiff introduced in evidence Exhibits 12 to 14, and 15 to 19, inclusive, purporting to be copies of letters sent from plaintiff to Fremont Lumber Company; Exhibit 15, purporting to be a telegram from defendant to plaintiff; and Exhibits 6 to 9, inclusive, purporting to be copies of invoices from plaintiff to defendant. These writings seemingly indicate that the transaction was between the plaintiff and defendant. There was no reference to Insulations, Inc., in the telegram, invoices, or the first five letters; and the mention of that company in the last two letters was merely an effort of the writer to distinguish Insulations, Inc., from Woolsulate, Inc.

The responsibility and authority of this court in an appeal from a finding and judgment of a trial court has been clearly delineated on many previous occasions.

"* * * We have repeatedly held that this court would only examine the evidence for the purpose of determining whether the judgment was supported by substantial evidence. Edwards v. Willson, 30 Wyo. 275, 219 P. 233; Lellman v. Mills, 15 Wyo. [149] 152, 87 P. 985." Boyle v. Mountford, 39 Wyo. 141, 149, 270 P. 537, 539.
See also Marshall v. Rugg, 6 Wyo. 270, 44 P. 700, 45 P. 486, 33 L.R.A. 679; Christensen v. McCann, 41 Wyo. 101, 282 P. 1061.

In this case, defendant admits that the insulating material was received by its representative from plaintiff and that the bill for the merchandise was not

paid. The sole defense is that defendant transacted the business with Insulations, Inc., and not with plaintiff; but defendant has presented no evidence as a basis for this contention, except the testimony of a conversation between Carlquist and Beckwith. Carlquist is alleged to have made a statement which seems to us rather ambiguous, "If we can't pay you we will give you wool to take care of the account." Defendant does not even *claim* that anything was said about the time, place, conditions, or terms of the furnishing of wool. Throughout the suit, plaintiff has maintained that defendant's denials of indebtedness were inconsistent with its conduct at the time of the transaction, and as above noted, introduced defendant's telegram to plaintiff dated September 21, 1950, four invoices, and a number of letters, all addressed by plaintinff to defendant. The telegram read: "Advise by wire if we can pick up 250 sacks wool tomorrow."

However doubtful we might be that the trial court could have properly granted the judgment which defendant desires, a determination of that fact is beyond the scope of this decision. Our only interest here is to ascertain whether or not the evidence before the court was sufficient to warrant the decision which was made. As appears from the above analysis, we think it was.

Defendant quotes 17 C.J.S. 372:
"When an offer is made to a particular person it can be accepted by him alone, and is not transferable by him to another; nor can it be accepted by such other without the offerer's consent."
and 46 Am.Jur. 233:
" * * * a person has a right to select and determine with whom he will contract and cannot have another person thrust on him without his consent * * *."
as authority for his argument that defendant did not contract with Woolsulate, Inc. We think that this

question is one of fact and that oracular quotations of the legal rules mentioned are not more than a guide which the trial court might have used in determining what the parties actually did, but which are of no assistance in the reviewing court.

The trial court was the sole judge of the credibility of the witnesses and was entitled to evaluate their testimony. See Caswell v. Ross, 27 Wyo. 1, 188 P. 977; Gould v. James, 43 Wyo. 161, 299 P. 275.

We think the evidence must be held sufficient to sustain the findings and judgment. The judgment is affirmed.

*Affirmed.*

BLUME, C.J., and HARNSBERGER, J., concur.