COLORADO KENWORTH, INC., a Corpora-
tion, Appellant (Plaintiff below),

v.

ARCHIE MEEK TRANSPORTATION CO.,
Inc., a corporation, Appellee
(Defendant below).

No. 4021.

Supreme Court of Wyoming.

April 12, 1972.

**1184**

G. G. Greenlee of Murane, Bostwick, McDaniel, Scott & Greenlee, Casper, for appellant.

Donald E. Chapin of Crowell & Chapin, Casper, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

GUTHRIE, Justice.

Colorado Kenworth, Inc., appellant herein, filed a suit in Natrona County District Court against Archie Meek Transportation Co., appellee herein, claiming the sum of $6473.04 for the balance due after payment and credit for repairs made to two trucks of the transportation company. Appellee generally denied this claim and in addition asserted a counterclaim which was thereafter abandoned. The jury found generally for defendant and the trial court entered judgment that plaintiff take nothing. The trial court denied a motion for judgment notwithstanding the verdict and motions for new trial. It is from this judgment that appeal is taken.

It was admitted appellant undertook repair and did repair two trucks of appellee, but it was claimed the work and material furnished were of such character as to make the repairs worthless, in addition to pleading the abandoned counterclaim. After the trucks were repaired at the Denver headquarters of appellant, appellee took possession of these trucks and used them in his hauling business. There were numerous claims for faulty parts and repairs and evidence of much expense incurred by appellee in restoring the trucks to proper condition and to keep them running. Between the time these trucks were returned to appellee and the time this suit was filed certain payments were made by appellee and credits given by appellant, leaving a balance of $6473.04 claimed then to be due. At the trial appellee submitted evidence of claimed offsets or credits for repairs necessitated by the failure to properly repair these trucks and for loss of use in the amount of $5332.19 including the so-called "down time."

During the course of the trial appellant amended its claim and reduced the claimed total to $6082.96 as the result of the admission that one of the offsets claimed by defendant in the sum of $390.08 should be allowed defendant. This would reduce both the claim and the offset by this sum, leaving proven offsets of $4942.11. After allowing full credit for these claimed offsets appellant now claims that there was a minimum due it of $1140.85 under any circumstances and further contends, appellee having wholly failed by competent or substantial evidence to show the value of the "down time" or the value of loss of use in the sum of $2448, that judgment should have been entered for appellant in the sum of $3588.85.

An examination of the record does not reveal any evidence of any ascertainable items of damage or offset beyond the amount of $4960.11, including an $18 item which does not appear on the exhibits but to which Archie Meek testified, being the cost of front-end repairs on the Kenworth when it was returned to Casper. This would leave a balance due of $1122.85 indisputably. It is significant to note defendant on August 25, 1969, as demonstrated by an exhibit received without objection, submitted a check in payment of the amount of $1025.97. This total of $1122.85 is nearly in agreement with the proffered payment.

Appellee in its brief contends there is considerable evidence with reference to innumerable hours expended by Meek's employees as a result of the improper repair of the faulty gear and tire wear related by various witnesses, of the replacement of an inefficient gear housing with an older and inferior unit which caused additional service and expense, that there was "down time" which was not included in the claimed amount, that there was a value of loss of use of the trucks beyond the minimum hourly rate, as to the generally patched up and makeshift condition of the trucks after the attempted repairs, and that the jury was justified in making a finding of this character, balancing these claims againt the undisputed bal-

ance herein. There is no evidence or showing from which jurors as the finders of fact could make any determination of the monetary value of such annoyances and difficulties except as reflected by payment of claims and offsets admitted at the trial. The record is silent as to the number of hours or the rate of wages of employees expended in the additional repairs. No dollar value is assigned to the wear and tear on the gears or tires or the cost occasioned by the replacement of the gear housing. A witness does testify there were hours of "down time" not included but makes no estimate of the amount thereof. The value of the loss of use of the trucks will be considered hereafter. There is no attempt to show the difference between the market value prior to the accident and after the repairs were made, which would be necessary in our view to make this last an item of damage which the jury could have properly considered. Appellee relies upon cases from this court, among them Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 P.2d 505, rehearing denied 177 P.2d 204, which reiterates the rule by which this court is bound and has often recognized that in consideration of a matter of this character appellee's evidence is accepted as true and all favorable inferences thereof must be indulged in appellee's favor. It treats in argument appellant's contention herein as directed to the sufficiency rather than to the absence of competent or substantial evidence and cites Willis v. Asbury Transportation Co., Wyo., 386 P.2d 934, 937; Wyoming Wool Marketing Association v. Woodruff, Wyo., 372 P.2d 174, 181, 3 A.L.R.3d 802; Woolsulate, Inc. v. Fremont Lumber Company, 75 Wyo. 492, 297 P.2d 818, 820, and Rocky Mountain Trucking Company v. Taylor, 79 Wyo. 461, 335 P.2d 448, 455. In all those cases the court did point to the condition of the record wherein there was a conflict of evidence but it is notable that in the Woolsulate case the court mentions its only concern can be "whether or not the evidence before the court was sufficient to warrant the decision which was made." Willis mentions the necessity of determining whether the evidence created a conflict. The Rocky Mountain Trucking case further suggests it must be decided if the determinations made by the court were supported by any substantial evidence.

The rule which is decisive in the consideration and disposal of this matter is as set out in Culver v. Sekulich, 80 Wyo. 437, 344 P.2d 146, 156, wherein it is said:

"* * * It is the function of an appellate court to ascertain whether or not there was substantial evidence upon which the trier of fact could base its opinion if it believed the testimony. * * *"

See also Ford Motor Company v. Arguello, Wyo., 382 P.2d 886, 890.

■ No monetary loss or basis from which the loss could be computed was submitted to the jury from which they could in any manner except by guess and speculation determine the value of the items which appellee suggests justified the jury in disposing of plaintiff's undisputed claim for $1122.85. Damages cannot be proven in this manner but must necessarily be proven with some degree of certainty so that the fact finder can determine the amount from evidence before it with some reasonable degree of certainty. Reeder Flying Service v. Crompton, Wyo., 470 P.2d 281, 286; Blakeman v. Gopp, Wyo., 364 P.2d 986, 991.

Appellant's second contention is based upon the claim that there is no competent evidence from which the jury could have properly allowed the claim for "down time" or loss of use of these two units. The only evidence in the record which is relied upon by appellee to prove the value thereof was the testimony of Archie Meek who relied upon some rule or schedule of the Wyoming Public Service Commission which was not produced. This contention was presented to the trial court through the motion for new trial which assigned error "in the assessment of the amount of recovery awarded to the defendant, being too large" and that it was "not sustained by sufficient evidence." There was also

an instruction offered by appellant and refused which directed the jury that the defendant had not sustained its burden of proof as to its claim for "down time" and no award should be made. The question is then presented to us whether there is any substantial evidence which would support the claim for "down time" in the total aggregate sum of $2448, representing a total of 144 hours at the claimed rate of $17 per hour. The sole evidence in support of this claimed rate in the sum of $17 per hour appears from testimony of Archie Meek as follows:

"Q. Okay. Incidently, about the down time, what was the hourly rate that you have computed that for? A. The hourly rate was seventeen dollars an hour on a truck of that weight.

"Q. Who establishes the down time rate? A. Wyoming Public Service Commission.

"Q. Do they make those rates? A. Yes, any operator within Wyoming is under those rates.

"Q. Under what condition does that truck earn seventeen dollars an hour? A. Like it was, setting [sic] out on the location, or jumping around the location, practically doing nothing.

"Q. Are there other circumstances under which that truck receives—you receive—more than for operating that truck, more than the seventeen dollars an hour? A. Yes.

"Q. There is? A. Yes.

"Q. What condition? A. Well, just for an estimate, if you would haul forty-five thousand pounds from here to Rock Springs, Wyoming, you can go over there in four hours, and another four hours back home, in eight hours you would have around three hundred fifty to four hundred dollars.

"Q. Is that a usual rate you get for hauling, while this truck would be on the road? A. Yes, we are under Wyoming Public rates on every load that we haul.

"Q. That's on a ten ton-mile basis? A. It is.

"Q. But related to hours, this will come to more than the seventeen dollars an hour? A. Yes, sir.

"Q. Is there any condition, when this truck operates, that it gets less than seventeen dollars an hour? A. No, sir, we never let it get below seventeen dollars an hour.

"Q. Well, the question, of course, everyone asks, so I might as well ask it, did you have need for this truck, if it had not been down for the re-repairs, Colorado Kenworth were supposed to have done, would this truck have been operating, would you have been able to use it? A. We sure would, yes."

 Appellant herein does not contend that loss of use, or "down time," is not a proper item of damages. This court has not heretofore directly passed upon the question of proof required to base a claim for damages on "down time," or more properly "loss of use" or profits. Appellant directs its attack on this award solely on the ground that the party claiming loss of use must show with reasonable certainty the claimed amount of his damage. A usual method of proof to sustain this type of loss is the cost of hiring or renting another such vehicle, Chesapeake & Ohio Ry. Co. v. Elk Refining Co., 4 Cir., 186 F.2d 30, 32–33, 36 A.L.R.2d 329. See also Annotation, 18 A.L.R.3d, n. 12(b), p. 524, et seq. However, no attempt was made to do this in this case. The rental or usable value of the vehicle lost to use is another basis of proof upon which an award may be based, Caves v. Barnes, 178 Neb. 103, 132 N.W.2d 310, 314; Knaus Truck Lines v. Commercial Freight Lines, 238 Iowa 1356, 29 N.W.2d 204, 210, which interestingly enough holds it is improper to base such a claim upon loss of profits. Other cases have recognized that proof of loss of profits may sustain such an award, Nightengale v. Public Service Co-ordinated Transport, 8 N.J.Misc. 238, 149 A. 526, 529; Davis v. Mrs. Baird's Bakery, Tex. Civ.App., 30 S.W.2d 809, 810. This latter may be in some manner encompassed in

the usable value of the vehicle. This court has earlier in the Reeder and Blakeman cases, supra, established definitely that the fact finder must have evidence before it from which it can reasonably and with some degree of certainty determine the amount of any claimed loss, and there is no logical reason either apparent or suggested that this rule would be inapplicable in a motor vehicle case involving the loss of use. In addition thereto a suggested possibility remote and speculative cannot be made to take the place of substantial evidence, Edwards v. Harris, Wyo., 397 P.2d 87, 91. It would be improper to allow these jurors to speculate as to the value and amount of damages which may have been incurred by appellee by reason of the "down time" or any other amount of asserted offset herein in absence of substantial evidence. The jury obviously allowed the claimed value of the "down time" so that critical examination of the above quoted testimony must be made.

The charge of $17 per hour is based upon the asserted "down time" rate as established by the Wyoming Public Service Commission.[1] This commission has in its power and jurisdiction the right to fix uniform rates for services and regulate and supervise the operation of carriers, § 37–137, W.S.1957, 1971 Cum.Supp., and to publish or promulgate such regulations. It is pedantic to mention that rates are established to insure a fair and proper return to the carrier and must perforce include all expenses of operation. Thus if it were proper to use this as a base rate of the value for "down time" the deductible operation costs should necessarily be considered in determining the amount of the loss of use or profit. In our view the rate so established by the Wyoming Public Service Commission would be inapplicable in determining the reasonable rental value of such motor vehicle or the loss of profit. Appellee does not himself, although he has been engaged in the business for a great many years, testify as to the reasonable value of the use of his truck or that the rate upon which he bases his testimony is reasonable.

The remainder of the testimony, although suggesting that the average rate for the use of said truck and the profit therefrom can be considerably more than this figure, does not mention the expenses of operation and the driver, and without these factors being presented to the jury any estimate they might have made of the loss of use or profit would only be an extremely speculative guess.

It is our opinion that the defendant was not entitled to offsets for "down time" in the amount of $2448, or for any amount, so that the recovery of the plaintiff should be increased in the sum of $2448, and that the jury from the substantial evidence before it could only have determined that the appellant was entitled to judgment in the sum of $3570.85.

The case is remanded to the district court with directions that it enter judgment for appellant in such sum.

1. Witness's apparent reference is to Wyoming Intrastate Motor Freight Tariff No. 4–A, then Item 90, p. 9 (now in slightly revised form Item 100, p. 18), published and circulated by the Public Service Commission of Wyoming, entitled "Detention of Equipment." This provides a charge for delay not occasioned by the carrier. The original copy of the regulation would have been of doubtful admissibility as proving any of the issues herein. Although the rule does not state, it would appear that if a truck were brought to a job and was unable to load or unload because of the fault of the shipper the driver's time must be included therein because there is no provision for payment of that express item, and it may also inferentially be in the form of a penalty for delay of the shipment. The court can take judicial notice of such a document as has been done herein, Bunten v. Rock Springs Grazing Ass'n, 29 Wyo. 461, 215 P. 244, 253; Jensen v. Town of Afton, 59 Wyo. 500, 143 P.2d 190, 199.